R. BRIAN DIXON, Bar No. 076247
bdixon@littler.com
RICHARD N. HILL, Bar No. 083629
rhill@littler.com
LAURA E. HAYWARD, Bar No. 204014
lhayward@littler.com
LITTLER MENDELSON, P.C.
650 California Street, 20th Floor
San Francisco, CA 94108.2693
Telephone: 415.433.1940
Fax No.: 415.399.8490

Attorneys for Defendants
CLEANNET USA, INC., CLEANNET OF SOUTHERN CALIFORNIA, INC. and MARK SALEK

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

ESTHER ESTRADA, ISAAC CARRAZCO, and MARIA JACOBO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

CLEANNET USA, INC.; D&G ENTERPRISES, INC., dba CLEANNET OF THE BAY AREA; CLEANNET OF SAN JOSE; CLEANNET OF SOUTHERN CALIFORNIA, INC.; CLEANNET OF SAN DIEGO; CLEANNET OF SACRAMENTO; MARK SALEK; and MARK CRUM,

Defendants.

Case No. C-14-1785 JSW

**DEFENDANTS CLEANNET USA, INC., CLEANNET OF SOUTHERN CALIFORNIA, INC., AND MARK SALEK'S NOTICE OF MOTION AND MOTION TO DISMISS OR COMPEL ARBITRATION AND STAY THE PROCEEDINGS, OR IN THE ALTERNATIVE, DISMISS THIS ACTION PURSUANT TO F.R.C.P. 12(b)(1) and (b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: August 29, 2014
Time: 9:00 a.m.
Ctrm.: Courtroom 5, Second Floor

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page2 of 37

## TABLE OF CONTENTS

PAGE

NOTICE OF MOTION AND MOTION TO DISMISS OR STAY PROCEEDINGS, OR IN THE ALTERNATIVE, COMPEL ARBITRATION ..... ix.

SUMMARY OF ARGUMENT ..... xi.

I. INTRODUCTION ..... 1

II. RELEVANT FACTS ..... 1

A. The Parties ..... 1

B. Plaintiffs' Franchise Agreements All Contain A Dispute Resolution Provision With A Class Action Waiver ..... 2

C. Plaintiffs Allege the Non-D&G Defendants Acted As a Single Integrated Business With D&G ..... 4

D. Plaintiffs Failed To Mediate Or Arbitrate The Instant Dispute, And Instead Filed This Action ..... 4

III. MDL PETITION TO COORDINATE THE RESOLUTION OF THE ARBITRABILITY OF THIS AND OTHER SIMILAR CLASS ACTIONS ..... 5

IV. LEGAL ARGUMENT ..... 6

A. Plaintiffs' Complaint Is Subject To Alternative Dispute Resolution ..... 6

1. The Dispute Resolution Provisions Are Governed By The FAA ..... 6

B. The Dispute Resolution Provisions Are Enforceable Under The FAA ..... 7

1. A Valid Agreement To Arbitrate Clearly Exists ..... 8

2. The Dispute Resolution Provision Is Not Unconscionable ..... 8

3. Plaintiffs' Claims Fall Within The Scope Of The Dispute Resolution Provisions In Their Franchise Agreements ..... 12

4. Moving Defendants May Enforce The Dispute Resolution Provisions As Non-Signatories ..... 14

5. The Court Should Dismiss The Complaint As All of Plaintiffs' Claims Are Subject to Arbitration ..... 14

6. In The Alternative, The Court Should Compel Individual Arbitration and Stay This Action ..... 15

C. Alternatively, The Court Should Dismiss Moving Defendants Pursuant to F.R.C.P ..... 17

1. Legal Standard ..... 17

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

i.

Case No. C-14-1785 JSW

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page3 of 37

## TABLE OF CONTENTS
(CONTINUED)

PAGE

2. Plaintiffs Have Failed to Plead Sufficient Facts to State Any Claim Against the Non-D&G Defendants ........ 18

3. Plaintiffs Have Failed to Allege Sufficient Facts to Show Any Employment Relationship With Moving Defendants ........ 19

4. Plaintiffs' Labor Code Claims Against Mark Salek Must Be Dismissed ........ 21

5. Plaintiffs' Ninth Through Sixteenth Causes of Action Must Be Dismissed For Failure to Plead Sufficient Facts To State a Claim ........ 22

6. Plaintiffs' Conversion Claim Must Be Dismissed Because It Is Based On the Franchise Agreement ........ 23

7. Plaintiffs Have No Article III Standing to Assert Classwide Claims ........ 24

V. CONCLUSION ........ 25

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

ii.

Case No. C-14-1785 JSW

## TABLE OF AUTHORITIES

PAGE

**CASES**

*Allied-Bruce Terminix Co. v. Dobson*, 513 U.S. 265 (1995) .......... 6, 7

*Amisil Holdings Ltd. v. Clarium Cap. Mgmt., LLC*, 622 F. Supp. 2d 825 (N.D. Cal. 2007) .......... 14

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) .......... 17, 21

*AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011) .......... 6, 15, 16

*AT&T Technologies, Inc. v. Commc'n Workers of Am.*, 475 U.S. 643 (1986) .......... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 17, 18

*Bernal v. Cash Am. Int'l, Inc.*, 2013 U.S. Dist. LEXIS 138832 (N.D. Sept 23, 2013) .......... 13

*Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549 (4th Cir. 2001) .......... 10

*Bradstreet v. Wong*, 161 Cal.App.4th 1440 (2008) .......... 22

*Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F. 3d 914 (9th Cir. 2011) .......... 12

*Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D. Cal. 2007) .......... 25

*Cecala v. Moore*, 982 F. Supp. 609 (N.D. Ill. 1997) .......... 6

*Chandler v. State Farm Mutual Automobile Ins. Co.*, 598 F.3d 1115 (9th Cir. 2010) .......... 24

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .......... 7

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) .......... 6

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**PAGE**

*Citizens Bank v. Alafabco, Inc.*
539 US 52 (2003)....7

*Comedy Club, Inc. v. Improv West Assocs.*,
553 F.3d 1277 (9th Cir. 2009)....12, 13

*Davis v. Abington Memorial Hosp. et al.*,
2011 U.S. Dist. LEXIS 102211 (E.D. PA Sept. 8, 2011)....19, 21

*Dean Witter Reynolds, Inc. v. Superior Court*,
211 Cal. App. 3d 758 (1989)....10

*Delmore v. Ricoh*,
667 F.Supp.2d 1129 (N.D. Cal. 2009)....9

*Equal Employment Opportunity Comm'n v. Waffle House*,
534 U.S. 279 (2002)....12

*Fardig v. Hobby Lobby Stores, Inc.*,
2014 U.S. Dist. LEXIS 87284 (C.D. Cal. June 13, 2014)....16

*Farmers Ins. Exch. v. Zerin*,
53 Cal. App. 4th 445....23

*Ferguson v. DOC AJW Corinthian Colleges, Inc.*,
2013 U.S. App. LEXIS 21961 (9th Cir. 2013)....13

*Fittante v. Palm Springs Motors*
105 Cal. App. 4th 708 (2003)....10

*Futrell v. Payday California, Inc.*
190 Cal.App. 4th 1419 (2010)....20

*Gatton v. T-Mobile, USA, Inc.*,
152 Cal. App. 4th 571 (2007)....9

*Gauvin v. Trombatore*,
682 F.Supp. 1067 (N.D. Cal. 1988)....18

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991)....6

*Grabowski v. Robinson*,
817 F.Supp 2d 1159 (S.D. Cal. 2011)....11

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

## TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Gratz v. Bollinger*,
539 U.S. 244 (2003) ..... 24

*Green Tree Fin. Corp. v. Randolph*,
531 U.S. 79 (2000) ..... 6, 10

*Hodsdon v. DirecTV, LLC*,
2012 U.S. Dist. LEXIS 160638 (Nov. 8, 2012) ..... 10

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) ..... 7, 22

*In re Sony Gaming Networks and Customer Data Security Breach Litigation*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ..... 25

*Iskanian v. CLS Transportation of Los Angeles*,
2014 Cal. LEXIS 4318 (June 23, 2014) ..... 16

*Jeske v. Maxim Healthcare Servs.*,
2012 U.S. Dist. LEXIS 2963 (E.D. Cal. Jan. 10, 2012) ..... 23

*Jones v. Gregory*,
137 Cal.App.4th 798 (2006) ..... 22

*Juarez v. Jani-King*,
273 F.R.D. 571 (N.D. Cal. 2011) ..... 9

*Kairy v. Supershuttle Int'l*,
2012 U.S. Dist. LEXIS 134945 (N.D. Cal. Sept. 20, 2012) ..... passim

*Kilgore v. KeyBank, N.A.*,
718 F.3d 1052 (9th Cir. 2013) ..... 7, 11

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ..... 14

*Laird v. Capital Cities/ABC, Inc*,
68 Cal. App. 4th 727, 737, 742 (1998) ..... 20

*Lucas v. BMS Enterprises, Inc.*,
2010 U.S. Dist. LEXIS 66050 (N.D. Tex. July 1, 2010) ..... 24, 25

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..... 24

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

## TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Manning v. Boston Med. Ctr. Corp.*,
2011 U.S. Dist. LEXIS 19197 (D. Mass. 2011 Feb. 21, 1011) ....................19

*Martinez v. Coombs*,
49 Cal.4th 35 (2010) ....................20, 22

*Mastrobuono v. Shearson Lehman Hutton, Inc.*
514 U.S. 52 (1995)....................12, 15

*Metters v. Ralphs Grocery Co.*,
161 Cal. App. 4th 696 (2008) ....................8

*Monzon v. Southern Wine & Spirits of Cal.*,
834 F. Supp. 2d 934 (N.D. Cal. 2011) ....................14

*Morris v. Ernst & Young LLP*,
2013 U.S. Dist. LEXIS 95714 (N.D. Cal. July 9, 2013)....................12

*Morvant v. P.F. Chang's China Bistro, Inc.*,
870 F. Supp. 2d 831 (N.D. Cal. 2012) ....................16

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................6, 7

*Murphy v. DirectTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) ....................14, 15

*Nakahata v. N.Y. Presbyterian Health Care Systems, Inc.*
2011 U.S. Dist. LEXIS 8585 (S.D.N.Y. 2011 Jan. 28, 2011)....................19

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ....................17

*Norcal Mutual Insurance Co. v. Newton*,
84 Cal. App. 4th 64 (2000) ....................8

*PacifiCare Health Sys., Inc. v. Book*,
538 U.S. 401 (2003)....................7

*Parvataneni v. E*Trade Financial Corporation*,
967 F. Supp. 2d 1298 (N.D. Cal. 2013) ....................16

*Quevedo v. Macy's Inc.*,
2011 U.S. Dist. LEXIS 151464 (C.D. Cal. Oct. 31, 2011) ....................16

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

## TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Quevedo v. Macy's, Inc.*,
798 F. Supp. 2d 1122 (C.D. Cal. 2011) ....................16

*Reynolds v. Bement*
36 Cal.4th 1075 (2005) ....................21, 22

*Roberts v. Corrothers*,
812 F.2d 1173 (9th Cir. 1987) ....................17

*Roman Catholic Archbishop v. Superior Court*,
15 Cal.App.3rd 405, 411 (1971) ....................20, 21

*Roman v. Superior Court*,
172 Cal. App. 4th 1462 (2009) ....................11

*Schoenduve Corp. v. Lucent Techs., Inc.*,
442 F. 3d 727 (9th Cir. 2006) ....................12

*Simula, Inc. v. Autoliv, Inc.*
175 F.3d 716 (9th Cir. 1999) ....................12

*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*,
49 Cal. App. 4th 472 (1996) ....................24

*Soltani v. Western & Southern Life Ins. Co.*,
258 F.3d 1038 (9th Cir. 2001) ....................10

*Southland Corp. v. Keating*,
465 U.S. 1 (1984) ....................6

*Sparling v. Hoffman Constr. Co.*,
864 F.2d 635 (9th Cir.1988) ....................14

*Stolt-Nielsen S.A. et al. v. AnimalFeeds Intl. Corp*,
559 U.S. 662 130 S. Ct. 1758 (2010) ....................15

*Sunopta Global Organic Ingredients, Inc. v. Prinar (Hadas 1987), Ltd.*
2009 U.S. Dist. LEXIS 65049 (N.D. Cal. July 9, 2009) ....................15

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
368 F3d. 1053 (9th Cir. 2004) ....................14

*Toyota Motor Sales, USA, Inc. v. Superior Court*,
220 Cal.App.3d 864 (1990) ....................20

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page9 of 37

## TABLE OF AUTHORITIES
(CONTINUED)

PAGE

*Tracer Research Corp. v. National Envtl. Servs., Co.,*
42 F.3d 1292 (9th Cir. 1994) ....................12

*United States v. Nev. Tax Comm'n,*
435, 439 (9th Cir. 1971)....................16

*United States v. Warneke,*
199 F.3d 906 (7th Cir. 1999) ....................5

*Van Dyke Ford, Inc. v. Ford Motor Co.,*
399 F.Supp. 277 (D. Wis. 1975) ....................18

*Vu v. Cal. Commerce Club, Inc.,*
58 Cal. App. 4th 229 (1997) ....................24

*Wolsey, Ltd. v. Foodmaker, Inc.*
144 F3d 1205 (9th Cir. 1998) ....................8

*Wren v. RGIS Inventory Specialists,*
2007 U.S. Dist. LEXIS 9767 (N.D. Cal Jan. 30, 2007) ....................24

*Xinhua Holdings Limited v., Electronic Recyclers Intl. Inc.,*
2013 U.S. Dist. LEXIS 180512 (E.D. Cal. Dec. 26, 2013) ....................2, 8

**STATUTES**

9 U.S.C. § 1, et seq. ("FAA") .................... passim

28 U.S.C. § 1407 ....................5

Fed. R.Civ. P. 8(a)(2)....................17, 18

Fed. R. Civ. P. 12(b) ....................1, 8, 17, 24, 25

Fed. R. Evid. 201 ....................5

Cal. Business and Professions Code § 17200 ....................13, 22, 23

Cal. Civ. Code § 3521....................8

Cal. Civ. Code § 1670.5(a) ....................11

Cal. Code of Regulations § 310.114.1 ....................10

Cal. Lab. Code §§ 221, 223, 224, 226, 226.7, 226.8, 510, 512, 1174, 1194, 2699 and 2802........22

Cal. Lab. Code § 2699 ....................16

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

viii.

Case No. C-14-1785 JSW

## NOTICE OF MOTION AND MOTION TO DISMISS OR STAY PROCEEDINGS, OR IN THE ALTERNATIVE, COMPEL ARBITRATION

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 29, 2014, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 5, Second Floor of the United States District Court of the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Jeffrey S. White, CleanNet USA, Inc., CleanNet of Southern California, Inc. and Mark Salek ("Moving Defendants") will, and hereby do, move for an Order to Dismiss or to Compel Arbitration and Stay the Proceedings, or in the Alternative Dismiss This Action Pursuant to F.R.C.P. 12(b)(1) and 12(b)(6).

This Motion is made on the grounds that Plaintiffs Esther Estrada, Isaac Carrazco, and Maria Jacobo's ("Plaintiffs") claims are subject to final and binding arbitration pursuant to the dispute resolution provisions in their franchise agreements with defendant D&G Enterprises, Inc. dba CleanNet of the Bay Area. Moving Defendants thus hereby move to dismiss this lawsuit, or to compel arbitration of Plaintiffs' individual claims and stay this litigation pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. In the alternative, if the Court declines to enforce the dispute resolution provisions in Plaintiffs' Franchise Agreements, it should dismiss Plaintiffs' claims against Moving Defendants for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) or lack of standing under 12 (b)(1) because Plaintiffs fail to plead any facts to show any relationship, contractual or otherwise, or injury caused by, Moving Defendants.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page11 of 37

This Motion is based on this Notice, the Memorandum of Points and Authorities in support thereof, the accompanying declaration of R. Brian Dixon, and exhibits thereto, the Declaration of David Crum filed in support of D&G's Motion to Compel Individual Arbitration, and exhibits thereto, the papers and pleadings on file in this case, and all other evidence and argument as may be presented at the hearing on the motion.

Dated: July 10, 2014

/s/ R. Brian Dixon
R. BRIAN DIXON
RICHARD N. HILL
LAURA E. HAYWARD
LITTLER MENDELSON, P.C.
Attorneys for Defendants
CLEANNET USA, INC., CLEANNET OF SOUTHERN CALIFORNIA INC. and MARK SALEK

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS**

x.

**Case No. C-14-1785 JSW**

## SUMMARY OF ARGUMENT

Plaintiffs' claims against CleanNet USA, Inc., CleanNet of Southern California, Inc. and Mark Salek (collectively "Moving Defendants"), are subject to final and binding arbitration pursuant to the dispute resolution provisions in their Franchise Agreements with their Area Operator, defendant D&G Enterprises, Inc. dba CleanNet of the Bay Area ("D&G"). Plaintiffs expressly accepted their Franchise Agreements, initialing each page of the dispute resolution provisions and will be unable show procedural or substantive unconscionability, particularly in the franchisee-franchisor context. *Kairy v. Supershuttle Int'l*, 2012 U.S. Dist. LEXIS 134945 (N.D. Cal. Sept. 20, 2012) (J. White). Each of their claims falls within the broad and all-encompassing language requiring that all disputes "arising out of or relating to this Agreement..." be arbitrated. Moving Defendants may enforce the dispute resolution provisions as non-signatories because Plaintiffs' claims against them are premised on their Franchise Agreements, and Plaintiffs make allegations of concerted misconduct by Moving Defendants and D&G. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013); *Murphy v. DirectTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). The Court should thus dismiss this lawsuit, or compel arbitration of Plaintiffs' claims on an individual basis, upholding the class and representative action waiver pursuant to *Concepcion,* and stay this litigation pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA"). *Murphy,* 724 F.3d at 1226; *Fardig v. Hobby Lobby Stores, Inc.*, 2014 U.S. Dist. LEXIS 87284, at *20-*22 (C.D. Cal. June 13, 2014).

In the alternative, if the Court declines to enforce the dispute resolution provisions, it should dismiss Plaintiffs' claims against Moving Defendants for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), or lack of standing under 12 (b)(1), because Plaintiffs fail to plead any facts to show any relationship, contractual or otherwise, or injury caused by, Moving Defendants. Plaintiffs' conclusory allegations that all defendants were their joint employers or constitute a single integrated enterprise are insufficient. *See e.g., Manning v. Boston Med. Ctr. Corp.*, 2011 U.S. Dist. LEXIS 19197, at *3 (D. Mass. 2011 Feb. 21, 1011); *Davis v. Abington Memorial Hosp. et al.,* 2011 U.S. Dist. LEXIS 102211, at *18-*20 (E.D. PA Sept. 8, 2011); *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendants CleanNet USA, Inc. ("CleanNet USA"), CleanNet of Southern California, Inc. ("CleanNet of S.C.") and Mark Salek (collectively "Moving Defendants"), who are alleged to be operating as a "single, integrated business" with defendant D&G Enterprises, Inc. dba CleanNet of the Bay Area ("D&G") and CleanNet of San Diego and CleanNet of Sacramento,[1] hereby move to dismiss this lawsuit, or to compel arbitration of Plaintiffs' individual claims and stay this litigation pursuant to Sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. ("FAA").[2] Plaintiffs Esther Estrada, Isaac Carrazco, and Maria Jacobo's ("Plaintiffs") individual claims are subject to final and binding arbitration pursuant to the dispute resolution provisions in their franchise agreements with D&G, each of which contains a class action waiver. Moving Defendants may enforce the dispute resolution provisions as non-signatories because Plaintiffs' claims against them are premised on their franchise agreements. The dispute resolution provisions cover all of Plaintiffs' claims and are valid and enforceable under both federal and California law. In the alternative, if the Court otherwise denies this motion, it should dismiss Plaintiffs' claims for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) or lack of standing under 12 (b)(1) because Plaintiffs fail to plead any facts to show any relationship, contractual or otherwise, or injury caused by Moving Defendants.

## II. RELEVANT FACTS

### A. The Parties.

Throughout their Complaint, Plaintiffs lump all named defendants under a single moniker "CleanNet," which they describe as a janitorial franchising company that operates throughout California and the United States. (First Amended Complaint "FAC" ¶1) CleanNet USA allegedly sets national standards and policies and sells "Area Operator" franchises. (FAC ¶9) Area Operators sell local unit franchises, which provide janitorial services to commercial customers, including offices,

---

[1] "Moving Defendants" and CleanNet of San Diego and CleanNet of Sacramento are referred to collectively as the "Non-D&G Defendants."

[2] Because similar actions have been filed in other jurisdictions, Moving Defendants respectfully request that the Court hold its ruling on this motion in abeyance, pending the outcome of their Petition filed with the Judicial Panel on Multi-District Litigation, which is set for hearing on July 31, 2014. MDL Docket No. 2560.

schools, health care facilities, banks, airports, and industrial sites. (FAC ¶¶10-11) Plaintiffs contend that CleanNet of S.C. is one such "Area Operator" (FAC ¶10, 93), and Mark Salek is President and Director of CleanNet USA. (FAC ¶9) Despite these distinctions, Plaintiffs contend the Non-D&G Defendants are operating as a "single, integrated business" with D&G. (FAC ¶98)

While Plaintiffs allege that they are all residents of the Northern California "Bay Area" (Hayward and Concord) where D&G is located, they make no effort to allege the substance of their relationship with each, or any, of the separate defendants. Plaintiff Estrada simply alleges that she purchased a "Local Franchise" in July 2010 at the $1,000-per-month level, and that in September 2012, she upgraded her franchise to the $4,000-per-month level. (FAC ¶¶61-62) Plaintiffs attach a copy of a franchise agreement signed by Plaintiff Estrada to the Complaint.[3] (FAC ¶118, Exh. A "Estrada Agreement") Plaintiff Carrazco purchased a "CleanNet franchise" at the $4000-per-month level on September 7, 2012. (FAC ¶68) Plaintiff Jacobo signed a franchise agreement on September 19, 2012. (FAC ¶74) Notably, Plaintiffs fail not only to attach the relevant franchise agreements entered into by Carrazco and Jacobo, but fail to mention that their agreements were entered into solely with D&G. The agreements signed by Carrazco[4] and Jacobo are attached as Exhs. A&B to the Declaration of David Crum filed in support of D&G's Motion to Compel Individual Arbitration.[5] (Collectively, the three relevant agreements are referred to as the "Franchise Agreements.")

**B. Plaintiffs' Franchise Agreements All Contain A Dispute Resolution Provision With A Class Action Waiver.**

Plaintiffs concede that their Franchise Agreements contain dispute resolution provisions with class action waivers. (FAC ¶46-52) In fact, Plaintiffs initialed every page of their respective Franchise Agreements next to the statement "I have read, understood, and agree with the statements on this page as written," including the pages containing the "Dispute Resolution" provisions. The dispute resolution provisions in each Franchise Agreement all provide for mediation, and if the

[3] Notably, this agreement is signed by Esther Estrada as Franchisee and Vanessa Ruiz Estrada as Partner, yet Vanessa Ruiz is not a party to this action.
[4] The Carrasco Agreement is initialed on each page by Corinna Carrazco, an "individual having an interest in Franchisee," however, Corinna Carrazco is not a party to this action.
[5] For purposes of decided a motion to compel arbitration, the Court may properly consider documents outside the pleadings. *Xinhua Holdings Limited v., Electronic Recyclers Intl. Inc.*, 2013 U.S. Dist. LEXIS 180512, at *15 (E.D. Cal. Dec. 26, 2013).

dispute remains unresolved, arbitration "in accordance with the Federal Arbitration Act" and solely "on behalf of Franchisee" and not "as a representative of, or on behalf of, any other person or entity":

> XXII. DISPUTE RESOLUTION.
>
> The parties to this Agreement recognize that compliance with the terms of this Agreement and the nature of the Franchisor/Franchisee relationship may give rise to the need to resolve disputes between the parties. Both Franchisee and Franchisor wish to avoid the time, expense and disruption that can result from lawsuits, but they desire to have a method of resolving disputes that is mutually acceptable. For this purpose, the parties expressly agree first to resolve disputes by direct negotiation with each other. If such negotiations fail to reach an agreement, the party dissatisfied with the outcome of negotiations must submit the dispute, within **one hundred eighty**[6] (180) days, to mediation and/or arbitration under this Section XXII, as follows:
>
> **A. Mediation**. Before, and as a necessary condition precedent to, filing a demand for arbitration in accordance with this Agreement, Franchisee and Franchisor shall attempt to settle the dispute through mediation administered by the American Arbitration Association ("AAA") at its office closely in proximity to Franchisor's office in accordance with the Commercial Mediation Rules of the AAA. . . .
>
> **B. Arbitration**. All disputes, controversies, and claims of any kind arising between parties, including but not limited to claims arising out of or relating to this Agreement, the rights and obligations of the parties, the sale of the franchise, or other claims or causes of action relating to the performance of either party that are unable to be settled through mediation shall be settled by arbitration administered [by] AAA at its office closest in proximity to the Franchisor's office, in accordance with the Federal Arbitration Act and the Commercial Rules of the AAA, unless the parties otherwise agree in accordance with Section XXII.C of this Agreement. . . .
>
> 5. No arbitration or action under this Agreement shall include, by consolidation, joinder, or any other manner, any claims by any person or entity in privity with or claiming through or on behalf of Franchisee. Franchisee shall not seek to arbitrate or litigate as a representative of, or on behalf of, any other person or entity, any dispute, controversy, and claim of any kind arising out of or relating to this Agreement, the rights and obligations of the parties, the sale of the franchise, or other claims or causes of action relating to the performance of either party to this Agreement. **Neither Franchisor nor Franchisee shall seek to have any claims arbitrated as a class action or on a class-wide basis.**[7]
>
> 6. To the fullest extent permitted by law, direct negotiations, followed by mediation and/or binding arbitration, shall be the exclusive means of resolving any and all claims relating to this Agreement, including, but not limited to, claims for breach of contract, breach of covenant of good faith and fair dealing, fraud, violation of any and all franchise registration, disclosure and/or franchise protection statutes, regulations, or ordinances, whether federal, state or local, or any other common law claims.

---

[6] The bolded language is included in the Carrasco and Jacobo Agreements only.
[7] The bolded sentence is included in the Carrasco and Jacobo Agreements only.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page16 of 37

(Estrada Agreement at 37-38, ¶XXII(A)-(B), Carrasco & Jacobo Agreements at 41-42, ¶XXII(A)-(B), (emphasis added).)

**C. Plaintiffs Allege the Non-D&G Defendants Acted As a Single Integrated Business With D&G.**

Plaintiffs label all defendants as a "single, integrated business." (FAC ¶98) Throughout their Complaint, Plaintiffs refer to "CleanNet" without formally defining this term, and fail to materially differentiate amongst the various defendants with regards to their allegations of misconduct. For example, Plaintiffs claim that:

- "The reality is that CleanNet decides which customers a franchise will get, the terms of a franchise's customer contracts, how much the franchise gets paid, and when and how the franchise will do the work – making the franchisees actually employees of CleanNet, but without CleanNet meeting any of its obligations as an employer." (FAC ¶2);
- "The reality is that CleanNet commits only to providing accounts for an initial 6 month period, pervasively fails to meet even this meager commitment, and then systematically takes customer accounts away from existing franchises in order to sell them to new franchises." (FAC ¶3);
- "CleanNet sells the illusion that the various fees and charges it imposes on its franchises are necessary to cover the operating costs of the business. The reality is that these fees and charges are disproportionate to any cost borne by CleanNet or benefit provided to the franchises." (FAC ¶5);
- "CleanNet is able to perpetuate these illusions for one simple reason: It has failed to comply with California's franchise registration and disclosure laws, making it impossible for potential franchise purchasers to understand the risks of their investment before they make it, and making every single sale of a CleanNet franchise in California unlawful." (FAC ¶7).

Accordingly, there can be no dispute that Plaintiffs claim that the Non-D&G Defendants are acting in concert with D&G.

**D. Plaintiffs Failed To Mediate Or Arbitrate The Instant Dispute, And Instead Filed This Action.**

Despite acknowledging the existence of the dispute resolution provision in the Franchise Agreements (FAC ¶¶46-52), Plaintiffs have ignored their obligations and filed the instant lawsuit. By letter dated June 19, 2014, Moving Defendants each demanded compliance with the applicable dispute resolution provision and made mediation submissions to the American Arbitration Association, to be followed by arbitration in the event mediation is unsuccessful. Declaration of R.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

4.

Case No. C-14-1785 JSW

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page17 of 37

Brian Dixon ("Dixon Decl."), ¶2, Exh. A. On June 25, 2014, Plaintiffs rejected the demands for arbitration. *Id.*, ¶3, Exh. B.

### III. MDL PETITION TO COORDINATE THE RESOLUTION OF THE ARBITRABILITY OF THIS AND OTHER SIMILAR CLASS ACTIONS.

The instant putative class action is one of three putative class actions filed, and one threatened, against CleanNet USA and other CleanNet area operators since March 26, 2014, all making similar allegations that franchisees were misclassified as independent contractors, and alleging various wage and hour and unfair and deceptive practices claims:

- *Jose Sanchez v. CleanNet USA, Inc. et al.,* Northern District of Illinois, Eastern Division, Case No. 1:14-cv-02143, filed March 26, 2014;
- *Torres v. CleanNet USA, Inc., et al.,* Eastern District of Pennsylvania, Case No. 2:14-cv-02818-AB, initially filed April 10, 2014 in the Philadelphia County Court of Common Pleas, but removed to federal court on May 16, 2014; and
- *Alfaro v. CleanNet USA, Inc., et al.*, May 6, 2014 Letter to California Labor & Workforce Development Agency ("LWDA") sent by counsel in the *Torres* action. The LWDA has notified Plaintiff's counsel by letter dated May 30, 2014 that it does not intend to investigate these allegations. Dixon Decl., ¶4.

The claims alleged in each of these cases are premised on a common core of alleged facts, which if not handled in a coordinated and consolidated manner will subject the defendants to duplicative discovery in each case. This is especially so as according to *Torres*, it appears that *Sanchez* intends to pursue a nationwide FLSA claim, meaning that there will be an overlap both in common allegations and geographically as to the putative class members, potential witnesses and other evidentiary materials. Furthermore, the dispute resolution provision with its class action waiver is common across all cases and presents an important threshold issue for resolution under the FAA. In order to avoid redundancies and the prejudice of potentially inconsistent adjudications, Moving Defendants and other area operators have filed a Petition with the Judicial Panel on Multi-District Litigation, MDL Docket No. 2560, seeking transfer to and consolidation in the Northern District of Illinois, where the first case was filed pursuant to 28 U.S. CODE § 1407. This Petition is set to be heard on July 31, 2014. Dixon Decl., ¶5, Exh. C.[8]

---

[8] Moving Defendants respectfully request that the Court take judicial notice of the MDL Petition pursuant to Federal Rule of Evidence 201. *See e.g., United States v. Warneke*, 199 F.3d 906, 606, fn.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

5.

Case No. C-14-1785 JSW

## IV. LEGAL ARGUMENT

### A. Plaintiffs' Complaint Is Subject To Alternative Dispute Resolution.

#### 1. The Dispute Resolution Provisions Are Governed By The FAA.

As recently affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion,* 131 S. Ct. 1740, 1745 (2011), the FAA declares a liberal policy favoring the enforcement of arbitration agreements. 9 U.S.C. § 2. The FAA was enacted to overcome judicial hostility to arbitration agreements. *See Allied-Bruce Terminix Co. v. Dobson,* 513 U.S. 265, 270-71 (1995); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24 (1991). The FAA not only placed such agreements on equal footing with other contracts but also established a federal policy in favor of arbitration agreements. *See Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 89-90 (2000); *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984). "[E]ven claims arising under a statute designed to further important social policies may be arbitrated." *Green Tree Fin. Corp.*, 531 U.S. at 90. Thus, the FAA "requires that questions of arbitrability [...] be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). "Where the contract contains an arbitration clause, there is a presumption of arbitrability." *AT&T Technologies, Inc. v. Commc'n Workers of Am.,* 475 U.S. 643, 650 (1986).

Here not only do the Franchise Agreements explicitly dictate that the FAA shall apply (*see e.g.* Estrada Agreement, at 37-38, ¶XXII(A)-(B)), but the Franchise Agreements easily fall within the FAA's scope. For the FAA to apply, an arbitration agreement need only *affect* interstate commerce, thus the FAA applies to businesses which operate "within the flow of interstate commerce." *Allied–Bruce Terminix Cos., Inc.,* 513 U.S. at 273, 277; *see also, Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (holding that the FAA's reach is even broader than statutes touching transactions "in commerce" since Congress' use of the phrase "involving commerce ... signals an intent to exercise Congress' commerce power to the full"); *Cecala v. Moore*, 982 F. Supp. 609 (N.D. Ill. 1997) (*slightest nexus* of an agreement with interstate commerce will bring the agreement within the FAA). In *Allied-Bruce Terminix*, the Court found a dispute between an Alabama homeowner and an

1 (7th Cir. 1999) (judicial notice may be taken of documents filed and orders or decisions entered in any federal or state court).

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page19 of 37

Alabama-based pest control company was subject to the FAA because the pest-control company operated in multiple states and utilized materials originating from out of state. *Allied-Bruce Terminix Co.*, 513 U.S. 281; *see also Citizens Bank v. Alafabco, Inc.*, 539 US 52, 57–58 (2003) (debt restructuring agreement covered by FAA even though debtor and creditor were both located in the same state).

Plaintiffs concede Moving Defendants' activities fall within the broad reach of the Commerce Clause, referring to "CleanNet, a janitorial franchising company that operates…throughout California and the United States…" (FAC ¶1), quoting a source as saying "…between 2010 and 2012, CleanNet was one of the top ten fastest growing franchisors in the nation; in 2013, CleanNet reported 2,857 franchises nationwide…" (FAC ¶14) Plaintiffs further contend that CleanNet USA has its principal place of business in Columbia, Maryland, where Mark Salek is also resident (FAC at ¶¶90, 96) and that CleanNet USA "sets national standards and policies for franchise agreements, franchise fees, branding, equipment, supplies, and cleaning services…" (FAC ¶9) Finally, the Franchise Agreements contemplate that Plaintiffs will advertise, market and promote themselves on the world wide web (albeit after obtaining prior written consent from D&G). (*See e.g.* Estrada Agreement at13, ¶V(H).) Thus, Moving Defendants' economic activity bears on interstate commerce and is subject to federal control, and renders the FAA applicable here.

**B. The Dispute Resolution Provisions Are Enforceable Under The FAA.**

The role of the courts under the FAA is to determine: "(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue. If both questions are answered in the affirmative, the [FAA] requires the court to enforce arbitration." *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1058 (9th Cir. 2013); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). All other issues are for the arbitrator to decide, at least in the first instance. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *see also PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 (2003). Further, "[t]he [FAA] establishes that […] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability." *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

7.

Case No. C-14-1785 JSW

25. Here, all of Plaintiffs' claims are covered by an enforceable arbitration agreement. Accordingly, this Court should dismiss this suit under Federal Rule of Civil Procedure 12(b)(6).

**1. A Valid Agreement To Arbitrate Clearly Exists.**

Under the FAA, courts look to the state law of contracts when determining whether the parties entered into a valid and enforceable agreement to arbitrate. *Xinhua Holdings Limited v., Electronic Recyclers Intl. Inc.*, 2013 U.S. Dist. LEXIS 180512, at *12 (E.D. Cal. Dec. 26, 2013). In California, "[o]rdinarily, one who signs an instrument which on its face is a contract is deemed to assent to all its terms," and a "party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing." *Metters v. Ralphs Grocery Co.*, 161 Cal. App. 4th 696, 701 (2008).[9] Here Plaintiffs expressly accepted their Franchise Agreements, initialing each page of the dispute resolution provisions. Moreover, Plaintiffs allege in the Complaint that they each performed their duties under the Franchise Agreements. (FAC ¶124) Thus, there can be no question that Plaintiffs intended to be bound by the Franchise Agreement and its arbitration provision. A party cannot accept the benefits of a contract without also accepting its burdens. "He who takes the benefit must bear the burden." Cal. Civ. Code § 3521; *Norcal Mutual Insurance Co. v. Newton*, 84 Cal. App. 4th 64, 84 (2000) (compelling arbitration stating "No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens.")

**2. The Dispute Resolution Provision Is Not Unconscionable.**

Plaintiffs seek to avoid their duty to engage in dispute resolution under the Franchise Agreement by claiming that the dispute resolution provision is unconscionable. (FAC ¶¶46-52) Invalidating an arbitration agreement under California law requires a two-part showing: the party opposing arbitration has the burden of proving that the arbitration provision is both procedurally and substantively unconscionable. *Kairy v. Supershuttle Int'l*, 2012 U.S. Dist. LEXIS 134945, at *19 (N.D. Cal. Sept. 20, 2012) (J. White), *citing Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 795 (2012). Here, Plaintiffs cannot show either procedural or substantive unconscionability.

[9] The Franchise Agreement incorporates the law of California. (*See e.g.*, Estrada Agreement, at 39, ¶XXII(D)-(E)). It is well settled that a general choice of law provision does not trump the more specific designation of the FAA in an arbitration provision. *Wolsey, Ltd. v. Foodmaker, Inc.* 144 F3d 1205, 1209–1213 (9th Cir. 1998).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page21 of 37

The procedural unconscionability analysis "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. The element focuses on oppression or surprise." *Gatton v. T-Mobile, USA, Inc.,* 152 Cal. App. 4th 571, 581 (2007) "Surprise is defined as the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed term." *Id.* "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Id.* Neither of these factors is present here.

Here, there is no element of surprise where the dispute resolution provision is clearly labeled, set forth in standard font, with section headings that are bolded, capitalized, and underlined and is designated in the table of contents. Plaintiffs initialed each page of the dispute resolution provision acknowledging that they had read, understood and agreed with the statements on the page. *See e.g., Delmore v. Ricoh,* 667 F.Supp.2d 1129, 1136 (N.D. Cal. 2009) (argument that arbitration provision hidden undercut by the fact that plaintiff initialed clause). Plaintiffs also acknowledged provisions in the Franchise Agreement stating they had received a disclosure package at least 14 days before executing the Agreement or making any payment, that they had been informed of any differences between their Agreement and the standard agreement, and that they had read the Agreement and been given the opportunity to clarify any provisions they did not understand. Plaintiffs were encouraged to consult with an attorney or other professional advisor, and warranted that the Agreement was written in English and that they had the opportunity for translation of the disclosure document and the Agreement, and that they could in fact conduct business in the English language. (*See e.g.* Estrada Agreement, at 35-36, ¶XXI, A-D.) As this Court has acknowledged, a franchise agreement is unlike the standard employment contract of adhesion due to the detailed disclosures and waiting period required by franchise law: "[g]iven the context of the franchise agreements and the attendant waiting period, the Court is not persuaded that there was a significant, or more than minimal, amount of procedural unconscionability in the signing of the [franchise agreement].'" *Kairy,* 2012 U.S. Dist. LEXIS 134945, at *22-*23; *see also Juarez v. Jani-King,* 273 F.R.D. 571, 582 (N.D. Cal. 2011); Title 10, Cal. Code of Regs. §310.114.1 (requiring that California franchise offering circular advise franchisee that there is an arbitration provision and encourage consult with private legal counsel).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

**DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS**

9.

**Case No. C-14-1785 JSW**

Further, there can be no oppression where Plaintiffs could have easily said "no" at any time and sought another franchise opportunity with one of the many competitors in the marketplace. *See e.g., Dean Witter Reynolds, Inc. v. Superior Court,* 211 Cal. App. 3d 758, 769-72 (1989) (party who has a meaningful choice cannot be oppressed); *Monex Dep. Co. v. Gilliam,* 671 F. Supp. 2d 1137, 1144 (C.D. Cal. 2009); *Captain Bounce, Inc. v. Bus. Fin. Servs.,* 2012 U.S. Dist LEXIS 36750, at *20-*22 (S.D. Cal. Mar. 19, 2012). Quite the opposite, Plaintiff Estrada upgraded her franchise two years after signing up. (FAC ¶62) Without the presence of any element of surprise or oppression, Plaintiffs cannot show procedural unconscionability.

Nor can Plaintiffs show substantive unconscionability. Substantive unconscionability "focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Soltani v. Western & Southern Life Ins. Co.,* 258 F.3d 1038, 1043 (9th Cir. 2001) (*quoting Kinney v. United Healthcare Servs.,* 70 Cal. App. 4th 1322, 1330 (1999)). The California standard provides that only a "modicum of bilaterality" is required to save an agreement from substantive unconscionability. *See Hodsdon v. DirecTV, LLC,* 2012 U.S. Dist. LEXIS 160638, at *16 (Nov. 8, 2012) (J. White). A "modicum of bilaterality" exists when both the employer and the employee are bound to submit their claims to arbitration, subject to the same rules and procedures, and the same advantages and disadvantages. *Fittante v. Palm Springs Motors* 105 Cal. App. 4th 708, 725 (2003). Here both parties are bound to arbitrate all of the same types of claims: "all disputes …**between the parties**…" shall be settled by arbitration. (*See e.g.* Estrada Agreement at 37-38, ¶XXII(A)-(B).) Thus there can be no contention that there is any lack of mutuality.

Instead, Plaintiffs argue that the fee-splitting provision in the Franchise Agreement renders it unconscionable. However, fee-splitting provisions are not per se unconscionable, and "arising in the context of franchise agreements as opposed to employment contracts, may present a lesser challenge for compliance." *Kairy,* 2012 U.S. Dist. LEXIS 134945, at *24. Fee splitting is not unconscionable where fees and costs are not so prohibitively expensive as to deter arbitration. *Id.* Courts must inquire on a case-by-case basis, whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation. *Green Tree Fin. Corp.*, 531 U.S. at 91-92; *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 557-58 (4th Cir. 2001); *Captain Bounce*, 2012 U.S. Dist.

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page23 of 37

LEXIS 36750, at *33 (enforcing mutual fee-shifting provision); *Monex Dep. Co*, 671 F. Supp. at 1144-45 (finding arbitration fees not prohibitive). The analysis must include the specific claimant's ability to pay the arbitration and expected cost differential between arbitration and litigation in court and whether it is so substantial as to deter the bringing of claims. A mere risk of prohibitive costs is too speculative to invalidate an arbitration agreement. *Kilgore*, 718 F.3d at 1058. Here, the dispute resolution provision does not foreclose an arbitrator from reapportioning costs and includes a mechanism for "cost minimization" in small disputes. (Estrada Agreement at 38-39, ¶XXII B(4), C(3).) Finally, should the fee-splitting provisions of the dispute resolution provision be held to be unconscionable they should be severed in accordance with the provision's "Savings Clause," which states "[i]f any provision of this Section [] would violate applicable state or federal law, then the parties agree that such provision shall be excluded from the terms of this Agreement, or shall be modified to the minimum extent necessary to make the terms hereof lawful." (*See e.g.* Estrada Agreement at 39, ¶XXII(F).) *See Kairy,* 2012 U.S. Dist. LEXIS 134945, at *25 (severing fee-splitting provision where record showed strong likelihood plaintiffs could not afford arbitration); Cal. Civ. Code § 1670.5(a); *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1477 (2009)(even if provision unconscionable, plainly collateral to main purpose of contract, such that it should severed and the rest of the contract enforced); *Grabowski v. Robinson,* 817 F.Supp 2d 1159, 1179 (S.D. Cal. 2011) (severing three substantively unconscionable provisions from arbitration agreement).

Plaintiffs' contention that the **absence** of a prevailing party's attorneys' fees clause will make it difficult for Plaintiffs to obtain an attorney on contingency and result in them paying more in attorneys' fees than they could hope to obtain in relief (FAC ¶50),[10] is wholly unfounded. Plaintiffs ignore the explicit language of the dispute resolution clause which states that "an arbitrator shall have the power to enter an award…protecting its rights to the same extent a court could do so…" (*See e.g.*,

[10] Plaintiffs also contend that the attorneys' fees provision in the attached Promissory Note (allowing the holder of the Note to recover reasonable costs and attorneys' fees if successful in an enforcement action) applies to the Franchise Agreement as a whole, including the dispute resolution provision. (FAC ¶51) However, the language in the Promissory Note is applicable only "when an attorney is employed by the holder of this Note **to enforce any of its terms, and if the holder of this Note is successful in such enforcement.**" (Estrada Agreement, Attachment B, p.1) (emphasis added). Given that Moving Defendants are not seeking to enforce the Note, on its face, this provision does not apply.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

11.

Case No. C-14-1785 JSW

Estrada Agreement at 38, ¶XXII(B)(4).) Thus if Plaintiffs are entitled to recover attorneys' fees in court as the prevailing party, the arbitrator likewise may award those fees. *See Morris v. Ernst & Young LLP,* 2013 U.S. Dist. LEXIS 95714, at *13-*14 (N.D. Cal. July 9, 2013) (plaintiffs' fee-shifting rights adequately protected where entitled to recover in arbitration any fees and costs that they could recover in court). For the reasons set forth above, Plaintiffs' claims that the dispute resolution provision is unenforceable must be rejected.

**3. Plaintiffs' Claims Fall Within The Scope Of The Dispute Resolution Provisions In Their Franchise Agreements.**

In determining whether Plaintiff's claims are covered by the dispute resolution provisions, the threshold inquiry is an analysis of the contractual language. "Absent some ambiguity in the agreement […] it is the language of the contract that defines the scope of disputes subject to arbitration." *Equal Employment Opportunity Comm'n v. Waffle House,* 534 U.S. 279, 280 (2002). Thereafter, if the parties agree to submit a wide range of claims to arbitration, such an agreement *must be enforced. Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57-58 (1995).

Arbitration clauses that use phrases such as "arising out of or relating to," such as that found in Plaintiffs' Franchise Agreements, are considered to be broad in scope.[11] *Cape Flattery Ltd. v. Titan Mar., LLC,* 647 F. 3d 914, 922-23 (9th Cir. 2011); *Schoenduve Corp. v. Lucent Techs., Inc.,* 442 F. 3d 727, 732 (9th Cir. 2006). To require arbitration, the "factual allegations need only touch matters covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.* 175 F.3d 716, 721 (9th Cir. 1999). "[A]rbitration should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Comedy Club, Inc. v. Improv West Assocs.,* 553 F.3d 1277, 1284 (9th Cir. 2009).

Here, Plaintiffs' claims fall within the broad and all-encompassing language requiring that all disputes "arising out of or relating to this Agreement, the rights and the obligations of the parties…or other claims or causes of action relating to the performance of either party" be arbitrated. Many of

---

[11] The *scope* of an arbitration clause is governed by federal law. *Tracer Research Corp. v. National Envtl. Servs., Co.,* 42 F.3d 1292, 1294 (9th Cir. 1994).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page25 of 37

Plaintiffs' claims are explicitly listed amongst those which must be arbitrated (i.e. breach of contract, breach of the covenant of good faith and fair dealing, violation of franchise registration, disclosure and/or franchisee protection statutes). (*See e.g.* Estrada Agreement, at 38, ¶XXII (B).) All of Plaintiffs' claims arise out of and relate to the Franchise Agreement:

- Plaintiffs' claims under the California Franchise Law are based on alleged inadequacies and misstatements in the Franchise Agreements. (FAC ¶¶102-116)
- Plaintiffs' Breach of Contract claim is based entirely on alleged breaches of the Franchise Agreements. (*Id.*, ¶¶118-121)
- Plaintiffs' "Breach of Covenant of Good Faith and Fair Dealing" Claims are based on defendants "frustrating the purpose of the franchise agreements." (*Id.*, ¶¶123-127)
- Plaintiffs' Intentional Interference with Prospective Economic Advantage claim is based on defendants' alleged termination of accounts and skimming contract profits that are governed by the Franchise Agreements. (*Id.*, ¶¶129-135)
- Plaintiffs' "Conversion" and "Money Had and Received" claims are based on the alleged right to all receipts other than "*contracted* royalties and fees," and claims that defendants "skimmed *contract profits*." (*Id.*, ¶¶137-142)(emphasis added)
- Plaintiffs' "Unjust Enrichment" claim contends it would be unjust to allow defendants to retain the franchise and other fees paid by Plaintiffs because defendants failed to provide accounts at the levels promised to them, as governed by the Agreements. (*Id.*, ¶¶144-145)
- Six of Plaintiffs' claims stem from their allegation that they were misclassified as independent contractors and are entitled to wages, compensation for meal and rest periods allegedly not provided, as well as penalties. (*Id.*, ¶¶146-177) Plaintiffs' independent contractor status is set forth in the Franchise Agreements. (*See e.g.* Estrada Agreement, at 33-34, ¶XVIII) This Court has held that franchisees' claims of misclassification are subject to the franchise agreement's arbitration provisions. *Kairy*, 2012 U.S. Dist. LEXIS 134945, at *16-*19.
- Plaintiffs allege they were deprived of benefits promised *by the Franchise Agreements* in violation of the Cal. Business and Professions Code. (*Id.*, ¶¶178-180) [12]

---

[12] Claims brought pursuant to Section 17200 are arbitrable. *See, e.g. Ferguson v. DOC AJW Corinthian Colleges, Inc.*, 2013 U.S. App. LEXIS 21961, at *27 (9th Cir. 2013) (holding that the FAA preempts California's *Broughton-Cruz* rule that claims for public injunctive relief under the UCL cannot be arbitrated); *Bernal v. Cash Am. Int'l, Inc.*, 2013 U.S. Dist. LEXIS 138832, at *3 (N.D. Sept 23, 2013)(same)(J. White).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

13.

Case No. C-14-1785 JSW

**4. Moving Defendants May Enforce The Dispute Resolution Provisions As Non-Signatories.**

Moving Defendants, despite being non-signatories to the Franchise Agreements, can enforce the dispute resolution provisions against Plaintiffs under the doctrine of equitable estoppel. A nonsignatory can enforce an arbitration clause against a signatory in two regards: (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, or (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory party and a signatory and the allegations of interdependent misconduct are founded on or intimately connected with the obligations of the underlying agreement. *Kramer v. Toyota Motor Corp.,* 705 F.3d 1122, 1128-29 (9th Cir. 2013) (quoting *Goldman v. KPMG LLP,* 172 Cal. App. 4th 209, 219, 221 (2009)). "This rule reflects the policy that a plaintiff may not, 'on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.'" *Murphy v. DirectTV, Inc.,* 724 F.3d 1218, 1229 (9th Cir. 2013). Here, Plaintiffs make allegations of concerted misconduct by the Non-D&G Defendants and D&G which are founded in or intimately connected with the obligations of the Franchise Agreements. As set forth in Section IV.B.3, each of Plaintiffs' claims refers to or presumes the existence of the Franchise Agreement and, absent the Agreement, none of these claims would exist. *See e.g., Amisil Holdings Ltd. v. Clarium Cap. Mgmt., LLC,* 622 F. Supp. 2d 825, 841 (N.D. Cal. 2007) ("each of the claims are related to the Agreement in a way that either refers to or presumes the existence of the Agreement" because "[a]bsent the Operating Agreement, none of these claims would lie").

**5. The Court Should Dismiss The Complaint As All of Plaintiffs' Claims Are Subject to Arbitration.**

If the MDL Petition is denied, then Moving Defendants respectfully request the Court dismiss the Complaint, so that the parties may pursue alternative dispute resolution as all of Plaintiffs' claims are subject to arbitration. *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F3d. 1053, 1060 (9th Cir. 2004); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir.1988); *Monzon v. Southern Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 943 (N.D. Cal. 2011).

**6. In The Alternative, The Court Should Compel Individual Arbitration and Stay This Action.**

In the alternative, the Court should issue an order compelling arbitration of Plaintiffs' individual claims pursuant to Section 4 of the FAA:[13]

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement....

9 U.S.C. §4. Moving Defendants have demanded compliance with the dispute resolution provision in the Franchise Agreement and Plaintiffs have refused to engage in either mediation or arbitration. Thus, Moving Defendants are entitled to an order compelling arbitration.

Under Section 4 of the FAA, arbitration may only be compelled "in the manner provided for in such agreement." Here, the Franchise Agreement contains a valid class action waiver,[14] and so Plaintiffs may only be compelled to arbitrate their claims on an individual basis. As the Supreme Court confirmed in *Stolt-Nielsen S.A. et al. v. AnimalFeeds Intl. Corp,* 559 U.S. 662, 664, 684 130 S. Ct. 1758, 1763, 1775 (2010), it is improper to force a party into a class proceeding to which it did not agree, because arbitration "is a matter of consent." As such, "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.,* 559 U.S. 662, 684, 130 S. Ct. at 1775 (emphasis in original).

The Ninth Circuit has expressly endorsed sending individually named plaintiffs' claims to arbitration despite class allegations, and found class waivers in arbitration agreements enforceable. *Murphy,* 724 F.3d at 1226 ("Section 2 of the FAA, which under *Concepcion* requires the enforcement

[13] Moving Defendants are willing to participate in any mediation that this Court orders, which it has the power to do. *See e.g. Sunopta Global Organic Ingredients, Inc. v. Prinar (Hadas 1987), Ltd.* 2009 U.S. Dist. LEXIS 65049, at *7- *8 (N.D. Cal. July 9, 2009) (staying action and compelling mediation followed by arbitration per the terms of the parties' agreement). However, given that Plaintiffs have declined to mediate (and thus their compelled participation in such may be unproductive), the focus of this Motion is on compelling arbitration.

[14] Plaintiffs contend that the Franchise Agreement "purports to avoid litigation by class action," but that the Consolidation of Claims provision in the Franchise Agreement "indicates that claims can be consolidated." (FAC ¶51) In fact this section of the Franchise Agreement is in no way contradictory to the class waiver – it simply allows the parties to **voluntarily agree** in certain limited circumstances to have multiple disputes resolved in a single proceeding. (Estrada Agreement at 39, XXII C(4)). A contract "should be read to give effect to all its provisions and to render them consistent with each other." *Mastrobuono*, 514 U.S. at 6.

LITTLER MENDELSON, P.C. 650 California Street 20th Floor San Francisco, CA 94108.2693 415.433.1940

of arbitration agreements that ban class procedures, *is* the law of California and of every other state."); *Kairy*, 2012 U.S. Dist. LEXIS 134945, at *16-*19 ("...courts must compel arbitration even in the absence of the opportunity for plaintiffs to bring their claims as a class action"); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 846 (N.D. Cal. 2012) (finding *Concepcion* overruled *Gentry* and no longer precludes enforcement of class action waivers in arbitration agreements). The California Supreme Court has also recently upheld class waivers in *Iskanian v. CLS Transportation of Los Angeles,* 2014 Cal. LEXIS 4318, at *19 (June 23, 2014). Accordingly, if the Court elects to compel arbitration, it may only do so with respect to Plaintiffs' individual claims.

Further, any claims by Plaintiffs alleged pursuant to California Labor Code section 2699, the Private Attorney General's Act ("PAGA"), should also be compelled to arbitration on an individual basis. A PAGA claim is "plainly arbitrable to the extent that [plaintiff] asserts it only on his own behalf." *Quevedo v. Macy's, Inc.,* 798 F. Supp. 2d 1122, 1141 (C.D. Cal. 2011); *Parvataneni v. E*Trade Financial Corporation*, 967 F. Supp. 2d 1298, 1304-05 (N.D. Cal. 2013) (upholding individual arbitrability of PAGA claim) (J. White). Numerous federal courts, including this one, have held that representative PAGA action waivers are not categorically unconscionable and that a state rule to the contrary is preempted by the FAA – superior federal law. *See Fardig v. Hobby Lobby Stores, Inc.,* 2014 U.S. Dist. LEXIS 87284, at *20-*22 (C.D. Cal. June 13, 2014) (state law rule requiring arbitration agreements to permit collective PAGA actions is preempted as inconsistent with the objectives of the FAA); *Parvataneni* 967 F. Supp. 2d at1304-05; *Quevedo,* 798 F. Supp. 2d at 1142. Not only does the California Supreme Court's recent decision in *Iskanian* to the contrary (2014 Cal. LEXIS 4318, at *55) thus run afoul of this Court's consistent holdings but it is not binding on this court. *See e.g., United States v. Nev. Tax Comm'n*, 435, 439 (9th Cir. 1971)("decisions of the states are not binding" on "question[s] of federal law."); *see also Quevedo v. Macy's Inc.,* 2011 U.S. Dist. LEXIS 151464, at *2-*3, *9-*10 (C.D. Cal. Oct. 31, 2011) (finding that courts in the Ninth Circuit have recently found *Concepcion* to hold that collective PAGA actions are subject to FAA preemption: "The Court is of the view that the Supreme Court of the United States has spoken on this issue and that this Court is under no obligation to follow...a ruling of the California Supreme Court that is inconsistent with controlling Supreme Court precedent.")

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page29 of 37

In conjunction with compelling this matter to arbitration the Court should issue a stay pending alternative dispute resolution:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. §3.

### C. Alternatively, The Court Should Dismiss Moving Defendants Pursuant to F.R.C.P. 12(b) On The Grounds That Plaintiffs Have Failed to Plead Sufficient Facts To State a Claim Or Demonstrated Standing To Sue Them.

If the Court declines to enforce the dispute resolution provisions set forth in Plaintiffs' Franchise Agreement, the Court should dismiss Moving Defendants from the lawsuit pursuant to F.R.C.P. 12(b)(1) and (b)(6) on the grounds that Plaintiffs, all Bay Area franchisees who contracted with D&G, have failed to plead any specific facts to state a claim, or to demonstrate Article III standing to sue Moving Defendants.

#### 1. Legal Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims stated in the complaint. *See Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is proper where there is "no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Id.* While the pleader must establish "a short and plain statement of the claim showing that the pleader is entitled to relief" (see F.R.C.P. 8(a)(2)), threadbare recitals are not sufficient. F.R.C.P. 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). A complaint that offers only "naked assertions" devoid of further factual enhancement is insufficient. *Id.* Legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

A motion to dismiss is properly granted when a complaint offers nothing "more than labels and conclusions" – "a formulaic recitation of the elements of a cause of action will not do." *Bell*

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

17.

Case No. C-14-1785 JSW

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A complaint must contain enough "facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555, 570. Moreover, a plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)...." *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988). "Specific identification of the parties to the activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently." *Van Dyke Ford, Inc. v. Ford Motor Co*., 399 F.Supp. 277, 284 (D. Wis. 1975).

**2. Plaintiffs Have Failed to Plead Sufficient Facts to State Any Claim Against the Non-D&G Defendants.**

The Franchise Agreements are between Plaintiffs and D&G, not between Plaintiffs and CleanNet USA, CleanNet of S.C. or Mark Salek. Nowhere do Plaintiffs plead facts showing that they have any relationship, contractual or otherwise, with any of the Non-D&G Defendants. Without any factual explanation, Plaintiffs simply label all defendants as a "single integrated business," and lump them together under the moniker "CleanNet." While Plaintiffs contend that "CleanNet operates through a sprawl of corporate entities and fictitious business names" (FAC ¶1) they present no facts to describe how each defendant participated in any alleged conspiracy against Plaintiffs. The best they can do is offer conclusory allegations about "control" exercised by CleanNet USA over its Area Operators. Certainly, Plaintiffs do not set forth facts to demonstrate a specific injury by any defendant other than D&G, with whom they contracted.

Plaintiffs all reside in the Bay Area (Hayward and Concord). (FAC ¶¶82-84) D&G, doing business as CleanNet of the Bay Area, based in Oakland, is their local Area Operator. (FAC ¶¶ 10, 86) At the other end of the state, CleanNet of S.C. is an Area Operator located in Santa Fe Springs in Southern California. (FAC ¶¶10, 88) None of the Plaintiffs allege any dealings with any other Area Operators other than D&G.

Estrada claims she purchased a "Local Franchise" from D&G and later upgraded her franchise. She contends that she was never provided the "contracted-for level" of customer accounts – in her contract with D&G. On one occasion she visited the Area Operator (D&G) to complain after

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page31 of 37

she arrived at a job site and there was another CleanNet Local Franchise already there. (FAC ¶¶61-66, Exh. A) She makes no mention of any contact with the Non-D&G Defendants. Likewise, Carrazco details how he visited "the local Area Operator office" (D&G) on several occasions to ask why he had not received accounts he had purchased but was met with excuses. Absent are any allegations about the Non-D&G Defendants. (FAC ¶¶67-72) Similarly, Jacobo alleges that she "visited the CleanNet of the Bay Area's office," where she was given insufficient disclosures and then returned to the office to sign a franchise agreement. During a later visit to the "CleanNet offices" her husband saw documents that led him to believe that money was being skimmed off her accounts. (FAC ¶¶73-78) Jacobo also complains that she was not provided with sufficient accounts but yet had fees deducted from and monthly promissory note payments deducted from these accounts, issues which are outlined in the Franchise Agreement she signed with D&G. *Id.* Nowhere does Jacobo establish any contact or communication with any entity or individual other than D&G. *Id.* In sum, Plaintiffs have failed to state any connection and consequently, any plausible claim, against Moving Defendants and thus Moving Defendants should be dismissed from this lawsuit.

**3. Plaintiffs Have Failed to Allege Sufficient Facts to Show Any Employment Relationship With Moving Defendants.**

Additionally, Plaintiffs' Ninth through Fifteenth Causes of Action based on the California Labor Code must be dismissed with respect to Moving Defendants because Plaintiffs cannot establish that they were "employed" by Moving Defendants, jointly or otherwise. Plaintiffs' conclusory allegations that "CleanNet" (a term not formally defined in the Complaint) treated them like employees by exercising control over them and their work are wholly insufficient. Failing to establish an employment relationship with <u>each separate defendant</u> is fatal. *See e.g., Manning v. Boston Med. Ctr. Corp.*, 2011 U.S. Dist. LEXIS 19197, at *3 (D. Mass. 2011 Feb. 21, 1011) (complaint which includes vague allegations that the twenty defendants are "the employer, joint or otherwise" of the plaintiffs and class members, and/or alter-egos of each other," insufficient); *Nakahata v. N.Y. Presbyterian Health Care Systems, Inc.* 2011 U.S. Dist. LEXIS 8585, at *21-*22 (S.D.N.Y. 2011 Jan. 28, 2011) (complaint deficient due to the failure to specify which entity among the many named defendants employed the respective plaintiffs); *Davis v. Abington Memorial Hosp. et*

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

19.

Case No. C-14-1785 JSW

*al.*, 2011 U.S. Dist. LEXIS 102211, at *18-*20 (E.D. PA Sept. 8, 2011) (same).

In *Martinez v. Coombs*, 49 Cal.4th 35 (2010), the Supreme Court clarified the definition of "employer" for purposes of California's wage statutes. The Court found that the definition of "employment" embodied three alternative definitions: (a) to exercise control over the wages, hours or working conditions or (b) to suffer or permit to work or (c) to engage, thereby creating a common law employment. *Id.* at 64; *Futrell v. Payday California, Inc.* 190 Cal.App. 4th 1419, 1428 (2010). Nowhere do Plaintiffs allege how Moving Defendants allegedly controlled their wages, hours or working conditions. Nor are there factual allegations that any of these entities or individuals "suffered or permitted" plaintiffs to work. *Martinez*, 49 Cal.4th at 70. Finally, there are no factual allegations to show that Moving Defendants "engaged" Plaintiffs thereby creating a common law employment relationship. *Martinez*, 49 Cal.4th at 64, *Futrell,* at 1419. Under California common law, an employer-employee relationship exists "if the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details." *Toyota Motor Sales, USA, Inc. v. Superior Court,* 220 Cal.App.3d 864, 874 (1990) *see, also*, *Futrell,* 190 Cal.App. 4th at 1434 (the essence of the common law test of employment is the "control of details"). While Plaintiffs contend that "CleanNet" exerted certain controls over them, noticeably absent are any facts explaining the individual roles of Moving Defendants in that process. As there is neither a contractual relationship, nor any other type of *contact* with Moving Defendants alleged, Plaintiffs will be unable to show any employment relationship.

Moreover, Plaintiffs' threadbare allegation that Non-D&G Defendants are a single integrated business with D&G is insufficient to establish alter ego theory, or pierce the corporate veil. To do so, Plaintiffs must show that: (1) there was such a unity of interest and ownership between the two corporations that their separate personnel no longer exist; and (2) that it would be inequitable if the veil were not pierced. *Laird v. Capital Cities/ABC, Inc*, 68 Cal.App.4th 727, 737, 742 (1998) (corporate form is not lightly disregarded and the party seeking to pierce the corporate veil bears a "heavy burden"). As explained in *Roman Catholic Archbishop v. Superior Court,* 15 Cal.App.3rd 405, 411 (1971), the standard is exacting:

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page33 of 37

> [I]t must be made to appear that the corporation is not only *influenced and governed* by that person [or other entity] but that there is such a *unity of interest and ownership* that the individuality, or separateness of such person and corporation has ceased, and the facts are such that inherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a *fraud or promote injustice*. (Italics in the original, quoting from *Associated Vendors, Inc. v. Oakland Meat Co.* 210 Cal.App. 2nd 825, 837 (1962))

Plaintiffs do not allege sufficient facts to show that the Non-D&G Defendants are alter egos of D&G. To start, labeling all defendants as a single integrated business is a legal conclusion which must be disregarded for purposes of this Motion. *Davis*, 2011 U.S. Dist. LEXIS 102211, at *20 fn 40; *Iqbal,* 556 U.S. 678, 129 S. Ct. at 1949 ("[T]hreadbase recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") Plaintiffs' sole factual allegations regarding the relationships amongst the facially independent Non-D&G Defendants and D&G are limited to their contentions that CleanNet USA exercises certain controls over its Area Operators and collects royalty fees, and that Mark Salek is the President and Director of CleanNet USA. This is hardly the requisite unity and common ownership required to show that separate entities cease to exist. Absent are any allegations of inadequate capitalization, common ownership or management, use of the same offices and employees, lack of segregation of corporate records, or commingling of funds. Moreover, Plaintiffs have made no allegations to suggest any link between CleanNet of Southern California and D&G, which are separate Area Operators operating entirely independently from each other in different parts of the state. Thus, even if CleanNet USA was somehow found to be an alter ego of D&G, this would not make D&G and other Area Operators <u>alter egos of each other</u>. *See e.g. Roman Catholic Archbishop*, 15 Cal.App.3rd at 412 (The "alter ego" theory does not mean that where a "parent" controls several subsidiaries each subsidiary then becomes liable for the actions of all other subsidiaries.) For these reasons, Plaintiffs' Labor Code claims should be dismissed.

**4. Plaintiffs' Labor Code Claims Against Mark Salek Must Be Dismissed.**

Even assuming Plaintiffs could establish an employment relationship with CleanNet USA, they still cannot seek recourse under the California Labor Code against CleanNet USA President Mark Salek. In *Reynolds v. Bement* 36 Cal.4th 1075, 1169 (2005), the California Supreme Court held that corporate officers and directors, <u>including defendant's president</u>, could not be held personally

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

21.

Case No. C-14-1785 JSW

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page34 of 37

liable for unpaid wages under the California Labor Code.[15] The Court held that the statutory scheme of the Labor Code extends liability only to employers on its face, rather than to individuals, reasoning that the legislature demonstrated no intent to include individuals within its definition of "employer." The Court noted that, had the Legislature intended "to expose to personal civil liability any corporate agent who 'exercises control' over an employee's wages, hours, or working conditions, it would have manifested its intent more clearly . . . ." *Id.* at 1088; *Jones v. Gregory,* 137 Cal.App.4th 798 (2006) (CEO, "known to his employees as the 'owner,' 'the big wig,' 'the top guy,' and 'the boss,'" was part-owner of the building where the corporate defendant operated, "set all the wage rates..., authorized pay changes, and personally fired staff members he deemed unacceptable," was "the only individual authorized to sign checks on [the company's] behalf," and whose wife held all remaining corporate positions, could not be held individually liable for the corporation's Labor Code violations.) In 2010, the California Supreme Court in *Martinez v. Combs*, in accord with *Reynolds*, concluded that individual supervisors acting within the course and scope of their relationship with their employer cannot be held individually liable for failure to pay the minimum wage. 49 Cal. 4th at 66. Here, there are no allegations that Mark Salek had any personal involvement in any unlawful act, beyond his mere status as an executive of CleanNet USA. As a result all Labor Code claims against Mark Salek must be dismissed.

**5. Plaintiffs' Ninth Through Sixteenth Causes of Action Must Be Dismissed For Failure to Plead Sufficient Facts To State a Claim.**

Should the Court not dismiss Plaintiffs' Labor Code violations against Moving Defendants for the reasons set forth above, these claims and their Section 17200 claim should be dismissed because Plaintiffs merely recite applicable law and conclude, without any supporting facts, that

---

[15] While *Reynolds* only specifically discussed the definition of "employer" in Labor Code sections 510 and 1194, the other Labor Code sections that Plaintiffs allege were violated likewise contain no definition of "employer." *See* Cal. Lab. Code §§ 221, 223, 224, 226, 226.7, 226.8, 510, 512, 1174, 1194, 2699 and 2802; *see also Jones*, 137 Cal.App.4th at 804 (holding that Labor Code sections 201, 202, 203, 227.3, 1194.5 and 2802 also do not define "employer" and thus it is presumed "that the common law definition of an employer applies, precluding personal liability for corporate agents"); *see also Bradstreet v. Wong*, 161 Cal.App.4th 1440, 1451-52 (2008) (holding that since Labor Code sections 200, 201, 202 and 203 "impose obligations on the 'employer'" without statutorily defining the term, "absent a clear and unequivocal expression of contrary legislative intent, [the court] must assume the Legislature intended these terms would be interpreted in accordance with the common law").

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

22.

Case No. C-14-1785 JSW

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page35 of 37

Moving Defendants violated the law. *Jeske v. Maxim Healthcare Servs.*, 2012 U.S. Dist. LEXIS 2963, at *10-*13 (E.D. Cal. Jan. 10, 2012) (dismissing numerous Labor Code violations for failure to plead supporting facts). For example, Plaintiffs fail to allege basic supporting facts to show how Moving Defendants allegedly failed to maintain accurate wage statements or records (Fourteenth Cause of Action). Rather they merely point to Labor Code section 226(a) requirements and claim they were not satisfied, and nothing more. (FAC¶¶ 170-173) Likewise, Plaintiffs' meal and rest period claim (Fifteenth Cause of Action) is devoid of facts and simply a recitation of applicable law and legal conclusions. Nowhere do Plaintiffs explain how and when meal and rest periods were not provided. (FAC ¶¶ 176-177) Plaintiffs' remaining Labor Code claims suffer these same downfalls. (FAC ¶¶ 147-168) With respect to the Section 17200 claim (Sixteenth Cause of Action), Plaintiffs fail to specify which alleged violations of law are the unlawful business acts or practices, but instead merely reference the prior 177 paragraphs in the complaint. (FAC ¶¶ 178-180) Moving Defendants are not even on notice as to whether Plaintiffs are relying on alleged violation of Labor Code claims, or Franchise Law or both. None of these claims meets the *Iqbal/ Twombly* standard.

**6. Plaintiffs' Conversion Claim Must Be Dismissed Because It Is Based On the Franchise Agreement.**

Plaintiffs' conversion claim[16] should be dismissed from this lawsuit for an additional independent reason. Their conversion claim is based upon the allegations that they were entitled to funds received from customers except those needed to pay contracted royalties or fees, but that "CleanNet" skimmed contract profits and kept them for itself. (FAC ¶¶137-138) Accordingly, there is no dispute that Plaintiffs were required to pay certain royalties to their Area Operators, that such fees were received by the Area Operators, or became part of their general assets.

Yet, a conversion action is inappropriate where recovery of a debt is based on a contract. *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451(1997) (mere right to contractual payment will not suffice). Indeed, money cannot be the subject of conversion unless that money is identifiable as

[16] To maintain a claim for conversion, a plaintiff must establish: (1) his or her ownership or right to possession of the property at the time of the alleged conversion; (2) the defendant's intentional conversion by a wrongful act or disposition of property rights; and (3) consequent damages to the plaintiff. *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451(1997).

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

23.

Case No. C-14-1785 JSW

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page36 of 37

specific personal property. *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal. App. 4th 472, 485 (1996) (no allegations that as money in varying amounts was wired into the accounts, it was held in escrow or in some otherwise segregated fund for the benefit of plaintiff) There is no cause of action for conversion based on a generalized claim for money held. *Vu v. Cal. Commerce Club, Inc.*, 58 Cal. App. 4th 229, 235 (1997); *Wren v. RGIS Inventory Specialists,* 2007 U.S. Dist. LEXIS 9767, at *32-*34 (N.D. Cal Jan. 30, 2007) (money not subject of conversion unless specified and identified). Thus, Plaintiffs' claim for conversion should be dismissed.

**7. Plaintiffs Have No Article III Standing to Assert Classwide Claims.**

Finally, Plaintiffs have no Article III standing to bring a lawsuit against Moving Defendants and their claims against these parties should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See e.g., Chandler v. State Farm Mutual Automobile Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010). Under Article III of the Constitution, a federal court may not exercise jurisdiction over a dispute unless the plaintiff shows: (1) an injury in fact, meaning an invasion of a legally protected interest, which is (a) concrete and particularized, and (b) imminent and not conjectural or hypothetical; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that a favorable court decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Here Plaintiffs have failed to allege any injury that is traceable to Moving Defendants. There is absolutely no showing that Moving Defendants have distinctly harmed Plaintiffs when there are no facts pled to show the existence of any contractual relationship or that they were owed any duty by them. To the contrary, the facts point only to the existence of a relationship, contractual or otherwise, with D&G. Plaintiffs discuss only communications with and representations made by D&G in entering into this relationship and actions or inaction by D&G in the course of such relationship.

Without standing to sue Moving Defendants, Plaintiffs are unable to represent a class seeking recourse from them. In a class action context, named plaintiffs representing a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Gratz v. Bollinger,* 539 U.S. 244, 289 (2003); *Lucas v. BMS Enterprises, Inc.*, 2010 U.S. Dist. LEXIS 66050, at *5 (N.D.

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

24.

Case No. C-14-1785 JSW

Case4:14-cv-01785-JSW Document40 Filed07/10/14 Page37 of 37

Tex. July 1, 2010) ("To demonstrate that they have standing, named plaintiffs in a class action suit must meet every element of standing as to each defendant, including alleging that they were injured by each defendant named in the suit.")

As discussed above, Plaintiffs' conclusory allegations that all defendants were their joint employers or constitute a single integrated enterprise are insufficient to establish standing. *See e.g., In re Sony Gaming Networks and Customer Data Security Breach Litigation,* 903 F. Supp. 2d 942, 955-57 (S.D. Cal. 2012) (despite plaintiffs having alleged that all of the Sony entities worked together to provide a specific product, the court dismissed two affiliates for lack of standing because plaintiffs failed to allege a definitive relationship between the affiliates and the other Sony defendants or the class representatives); *Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939, 944-46 (S.D. Cal. 2007) (plaintiffs lacked standing against one Wal-Mart entity where they relied solely on allegations that it acted jointly with other Wal-Mart entities); *Lucas,* 2010 U.S. Dist. LEXIS 66050, at *15 (mere corporate relationship insufficient to give standing to sue).

As set forth above, Plaintiffs have nowhere asserted any personal injury incurred as a result of conduct by Moving Defendants and thus they have no standing to assert claims against them and cannot do so on behalf of others. Accordingly, the Court should dismiss the Complaint as to Moving Defendants.

## V. CONCLUSION

For all of the reasons set forth above, the Court should hold its decision on this Motion pending resolution of the MDL Petition. Should the MDL petition be denied, the Court should dismiss the Complaint or, in the alternative compel arbitration of Plaintiffs' individual claims and stay this action pending arbitration. If the Court declines to enforce the dispute resolution provisions, it should dismiss Moving Defendants from this lawsuit pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and/or Fed. R. Civ. P. 12(b)(1) for lack of standing.

Dated: July 10, 2014

/s/ R. Brian Dixon
R. BRIAN DIXON
LITTLER MENDELSON, P.C.
Attorneys for Defendants
CLEANNET USA, INC., CLEANNET OF SOUTHERN CALIFORNIA, INC. and MARK SALEK

LITTLER MENDELSON, P.C.
650 California Street
20th Floor
San Francisco, CA 94108.2693
415.433.1940

DEFTS' NOTICE OF MOTION/MPA ISO MOTION TO DISMISS OR COMPEL ARBITRATION/STAY, OR DISMISS

25.

Case No. C-14-1785 JSW