Charles G. Miller, State Bar No. 39272
*cmiller@bzbm.com*
C. Griffith Towle, State Bar No. 146401
*gtowle@bzbm.com*
Sony B. Barari, State Bar No. 243379
*sbarari@bzbm.com*
BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation
One Embarcadero Center, Suite 800
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Defendant
D&G ENTERPRISES, INC.
dba CLEANNET OF THE BAY AREA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ESTHER ESTRADA, ISAAC CARRAZCO, and MARIA JACOBO, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CLEANNET USA, INC.; D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA; CLEANNET OF SAN JOSE; CLEANNET OF SOUTHERN CALIFORNIA, INC.; CLEANNET OF SAN DIEGO; CLEANNET OF SACRAMENTO; MARK SALEK; and DAVID CRUM,

Defendants.

No. 4:14-cv-1785 JSW

**DEFENDANT D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA'S AND DAVID CRUM'S NOTICE OF MOTION AND MOTION TO COMPEL MEDIATION AND INDIVIDUAL ARBITRATION AND TO DISMISS, OR IN THE ALTERNATIVE, TO STAY PENDING DISPUTE RESOLUTION**

Date: Friday, August 29, 2014
Time: 9:00 a.m.
Place.: Courtroom 5, 2nd Floor
1301 Clay Street,
Oakland, CA 94612

The Honorable Jeffrey S. White



BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Case4:14-cv-01785-JSW Document42 Filed07/10/14 Page2 of 33

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

**TABLE OF CONTENTS**

I. SUMMARY OF ARGUMENT ....1

II. STATEMENT OF ISSUES TO BE DECIDED ....2

III. STATEMENT OF FACTS ....2

IV. ARGUMENT ....5

A. Federal and California Public Policy Favor Enforcement of Dispute Resolution Agreements ....5

B. The Court Should Require Mediation Prior to Arbitration ....6

C. After Mediation, if Necessary, the Court Should Enforce Arbitration ....7

1. The Arbitration Provision is Valid and Enforceable ....8

a. The Arbitration Provision Is Not Unconscionable ....8

(1) The Agreement is Not Procedurally Unconscionable 9

(2) The Agreement is Not Substantively Unconscionable 12

b. The Court Should Sever Any Unconscionable Clause and Enforce Dispute Resolution ....17

D. The Dispute Resolution Provision Encompasses Plaintiffs' Claims ....18

E. The Court Should Compel Plaintiffs to Dispute Resolution on an Individual Basis ....19

F. PAGA Claims are Subject to Individual Arbitration ....20

G. The Court Should Dismiss or, in the Alternative, Stay the Action Pending Dispute Resolution ....24

V. CONCLUSION ....25

-i-

2465.000/822143.4

D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA'S NOTICE OF MOTION AND MOTION TO COMPEL DISPUTE RESOLUTION / Case No. 4:14-cv-1785 JSW

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A & M Produce Co. v. FMC Corp.*,
135 Cal.App.3d 473 (1982) ....... 9

*American Express Co. v. Italian Colors Restaurant*,
133 S. Ct. 2304 (2013) ....... 2

*Amisil Holdings Ltd., v. Clarium Capital Management*,
622 F.Supp.2d 825 (N.D. Cal. 2007) ....... 1

*Appelbaum v. AutoNation Inc.*,
2014 WL 1396585 (C.D. Cal. Apr. 8, 2014) ....... 21, 22

*Armendariz v. Found. Health Psychare Services, Inc.*,
24 Cal. 4th 83 (2000) ....... 6, 9, 12, 17

*AT & T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011) ....... 2

*B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*,
2007 WL 3232276 (N.D.Cal. Nov. 1, 2007) ....... 24

*Brosnan v. Dry Cleaning Station Inc.*,
2008 WL 2388392 (N.D. Cal. June 6, 2008) ....... 24

*Broughton-Cruz* ....... 21, 23

*C.H.I. Inc. v. Marcus Bros. Textile, Inc.*,
930 F.3d 762 ....... 24

*Castro v. Cintas Corporation No. 3*,
2014 WL 1410524 (N.D. Cal. Apr. 11, 2014) ....... 22

*Chavarria v. Ralphs Grocery Co.*,
733 F.3d 916 (9th Cir. 2013) ....... 15

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ....... 6, 7

*Cione v. Foresters Equity Services, Inc.*,
58 Cal.App.4th 625 (1997) ....... 18

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) ....... 6

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Case4:14-cv-01785-JSW Document42 Filed07/10/14 Page4 of 33

*Comb v. PayPal, Inc.*,
218 F. Supp. 2d 1165 (N.D. Cal. 2002) ........ 15

*Coneff v. AT&T Corp.*,
673 F.3d 1158 ........ 14

*Correa v. Firestone Complete Auto Care*,
2013 WL 6173651 (N.D. Cal. Nov. 25, 2013) ........ 7, 9, 10

*Cortez v. v. Ross Dress for Less, Inc.*,
2014 WL 1401869 (C.D. Cal. Apr. 10, 2014) ........ 7

*Cox v. Ocean View Hotel Corp.*,
533 F.3d 1114 (9th Cir. 2008) ........ 8

*Davis v. Nordstrom, Inc.*,
2014 WL 2808139 ........ 13

*Delmore v. Ricoh Americas Corp.*,
667 F.Supp.2d 1129 (N.D. Cal. 2009) ........ 8, 9, 10

*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005) ........ 2, 13

*Fardig v. Hobby Lobby Stores Inc.*,
2014 WL 2810025 (C.D. Cal. June 13, 2014) ........ 21, 23

*Ferguson v. Countrywide Credit Indus., Inc.*,
298 F.3d 778 ........ 9

*Fimby-Christensen v. 24 Hour Fitness USA, Inc.*,
2013 WL 6158040 (N.D. Cal. Nov. 22, 2013) ........ 8, 22

*Gentry v. Superior Court*,
42 Cal. 4th 443 (2007) ........ 13

*Gilmer v. Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) ........ 6

*Grabowski v. Robinson*,
817 F. Supp.2d 1159 (S.D. Cal. 2011) ........ 18, 21

*Iskanian v. CLS Transp. Los Angeles, LLC*,
2014 WL 2808963 (Cal. June 23, 2014) ........ 12, 22, 23

*Jasso v. Money Mart Exp, Inc.*
879 F. Supp. 2d 1038 (N.D. Cal. 2012) ........ 13

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-iii-

2465.000/822143.4

D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA'S NOTICE OF MOTION AND MOTION TO COMPEL DISPUTE RESOLUTION / Case No. 4:14-cv-1785 JSW

Case4:14-cv-01785-JSW Document42 Filed07/10/14 Page5 of 33

*Kairy v. Supershuttle Int'l, Inc.*,
2012 WL 4343220 (N.D. Cal. Sept. 20, 2012) ........................................................ *passim*

*Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*,
290 F.3d 1287 (11th Cir. 2002) ........................................................................6

*Kilgore v. KeyBank, Nat. Ass'n*,
673 F.3d 947 (9th Cir. 2012) ........................................................................8, 21, 23

*Kilgore v. Keybank National Ass'n*,
718 F.3d 1052 (9th Cir. 2013) ........................................................................14, 15

*Lara v. Onsite Health, Inc.*,
2012 WL 4097712 (N.D. Cal. Sept. 17, 2012) ........................................................18

*Lewis v. UBS Financial Services, Inc.*
818 F. Supp. 2d 1161 (N.D. Cal. 2011) ........................................................13

*Luchini v. Carmax, Inc.*,
2012 WL 3862150 (E.D. Cal. Sept. 5, 2012) ........................................................20

*Marques v. Living*,
2014 WL 1379645 (N.D. Cal. Apr. 8, 2014) ........................................................9, 12, 18

*Mastrobuono v. Seharson Lehman Hutton, Inc.*,
514 U.S. 52 (1995) ........................................................................6

*McCaffrey Grp., Inc. v. Superior Court*,
224 Cal. App. 4th 1330 (2014) ........................................................................14

*Milos (1989) Ltd. v. Sunopta Global Organic Ingredients, Inc.*,
2008 WL 2561643 (N.D. Cal. June 26, 2008) ........................................................7

*Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........................................................................6

*Molina v. Scandinavian Designs, Inc.*,
2014 WL 1615177 (N.D. Cal. Apr. 21, 2014) ........................................................8

*Moody v. Metal Supermarket Franchising Am. Inc.*,
2014 WL 988811 (N.D. Cal. Mar. 10, 2014) ........................................................24

*Morris v. Ernst & Young LLP*,
2013 WL 3460052 (N.D. Cal. July 9, 2013) ........................................................7, 14

*Morvant v. P.F. Chang's China Bistro, Inc.*,
870 F. Supp. 2d 831 (N.D. Cal. 2012) ........................................................ *passim*

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-iv-

2465.000/822143.4

D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA'S NOTICE OF MOTION AND MOTION TO COMPEL DISPUTE RESOLUTION / Case No. 4:14-cv-1785 JSW

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)....................5

*Nagrampa v. MailCoups, Inc.*,
469 F.3d 1257....................9, 11

*Nelson v. AT&T Mobility LLC*,
2011 WL 3651153 (N.D. Cal. Aug. 18, 2011)....................21

*Open Rd. Ventures, LLC v. Daniel*,
2009 WL 3809812 (N.D. Cal. Nov. 13, 2009)....................7

*Parvataneni v. E*Trade Financial*,
967 F. Supp.2d....................21

*Parvataneni v. E*Trade Financial Corporation*,
967 F. Supp.2d 1298 (N.D. Cal. 2013).................... *passim*

*Quevedo v. Macy's, Inc.*,
798 F.Supp.2d 1122 (C.D. Cal. 2011)....................20, 21, 23

*Roman v. Superior Court*,
172 Cal.App.4th 1462 (2009)....................17

*Sanders v. Swift Trans. Co. of Arizona, LLC*,
843 F. Supp. 2d 1033, 1035 (N.D. Cal. 2012)....................13

*Sparling v. Hoffman Cosnt. Co., Inc.*,
564 F.2d 635 (9th Cir. 1988)....................24

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662, 130 S. Ct. 1758 (2010)....................19

*Sunopta Global Organic Ingredients, Inc. v. Prinir (Hadas 1987), Ltd.*,
2009 WL 2044683 (N.D. Cal. July 9, 2009)....................7

*United States v. Nev. Tax Comm'n*,
439 F.3d 435 (9th Cir. 1971)....................23

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*,
962 F. Supp. 2d 1172 (N.D. Cal. 2013)....................18

*Valle v. Lowe's HIW, Inc.*,
2012 WL 4466523 (N.D. Cal. Aug. 30, 2012)....................22

**Statutes**

9 U.S.C. §§ 1 through 4....................1

9 U.S.C. § 2....................5, 8

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

9 U.S.C. § 3....................25

9 U.S.C. § 4....................7

Cal. Labor Code §§ 2698 *et seq*.................... *passim*

California Civil Code § 1670.5(a)....................17

Federal Arbitration Act.................... *passim*

28 U.S. Code § 1407....................5

**Other Authorities**

Title 10, California Code of Regulations, § 310.114.1....................11

F.R.C.P. Rule 12(b)(6)....................1

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Case4:14-cv-01785-JSW Document42 Filed07/10/14 Page8 of 33

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on Friday, August 29, 2014 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jeffrey S. White, United States District Court Judge, in Courtroom 5 of the above-entitled Court, defendants D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA, and David Crum will and hereby do move, pursuant to 9 U.S.C. §§ 1 through 4, to (1) compel mediation and, if necessary, individual arbitration of the claims in Plaintiffs' Complaint; and (2) to dismiss pursuant to Rule 12(b)(6), F.R.C.P., or, in the alternative, to stay the litigation of Plaintiff's claims pending the completion of dispute resolution.

This motion is made on the grounds that Plaintiffs agreed in writing to mediate and, if necessary, arbitrate the claims asserted in the Complaint, and is based on this Notice of Motion and Motion, and the Memorandum of Points and Authorities herein, the complete files and records herein, and on the argument and other evidence to be presented at the hearing of this matter.

DATED: July 10, 2014

BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Law Corporation

By: *_/s/ Charles G. Miller_*
Charles G. Miller
Attorneys for Defendant
D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA

-1-

2465.000/822143.4 D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA'S NOTICE OF MOTION AND MOTION TO COMPEL DISPUTE RESOLUTION / Case No. 4:14-cv-1785 JSW

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendant D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA and David Crum (hereinafter collectively "CleanNet") submit the following memorandum of points and authorities in support of their Motion to Compel Mediation and Individual Arbitration and to Dismiss, or in the Alternative, to Stay Pending Dispute Resolution.[1]

**I. SUMMARY OF ARGUMENT**

Plaintiffs Esther Estrada, Isaac Carrazco, and Maria Jacobo (collectively, "Plaintiffs") each operated as franchisees of CleanNet under the terms of separate Franchise Agreements, which the Plaintiffs signed and entered into upon purchase of their franchises (collectively, "Franchise Agreement").[2] The Franchise Agreement includes four pages of specific dispute resolution provisions, including a mediation and arbitration provision, whereby Plaintiffs and CleanNet mutually agreed to mediate, and if that failed, to arbitrate any disputes arising out of the Franchise Agreement that could not otherwise be resolved by direct negotiation or mediation. Under the terms of the Franchise Agreement, Plaintiffs had at least 14 days to review documents pertinent to the Franchise Agreement, and at least 7 days to review the Franchise Agreement itself before its execution. The Plaintiffs chose to execute the Franchise Agreement – explicitly acknowledging proper receipt and sufficient time for review – and agreed to be bound by its dispute resolution procedures, including a class waiver provision pursuant to which Plaintiffs agreed not to arbitrate or litigate as representatives of any other individuals or entities. Notwithstanding, Plaintiffs filed this class and representative action lawsuit alleging claims against CleanNet.

---

[1] As a corporate officer of CleanNet, sued herein as a result of his role with CleanNet,, (Complaint, ¶¶ 107, 115) and under the terms of the Franchise Agreement, individual defendant David Crum is entitled to compel arbitration. *See, e.g., Amisil Holdings Ltd., v. Clarium Capital Management*, 622 F.Supp.2d 825, 831-839 (N.D. Cal. 2007) (Holding that under Ninth Circuit holdings, officers and managers of company, who were nonsignatories to agreement, could nonetheless enforce arbitration provision against signatory) (citing *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185 (9th Cir. 1986); *Britton v. Co-op Banking Group*, 4 F.3d 742 (9th Cir. 1993)). Accordingly, David Crum and the CleanNet entities bring this motion collectively.

[2] While the Plaintiffs are each subject to a different Franchise Agreement, the provisions relevant to this motion are substantially similar. Declaration of David Crum ("Crum Decl."), Exs. A-C. Hereinafter, all citations to the Franchise Agreement refer to that of Plaintiff Estrada, Crum Decl. Ex. C, unless otherwise noted.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Based on the strong public policy favoring arbitration, the clear language of the Federal Arbitration Act (the "FAA"), and the jurisprudence of the United States Supreme Court and other cases interpreting the FAA, this Court should hold Plaintiffs to their written agreement. The Supreme Court has recently reaffirmed that under the FAA, courts must enforce arbitration agreements according to their terms, except where a generally applicable contractual defense would invalidate the agreement. *AT & T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) ("*Concepcion*"); *see also American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304 (2013). No such defenses apply here. Indeed, the *Concepcion* Court held that the California Supreme Court's so-called *Discover Bank* rule – which held that arbitration agreements were unenforceable if they contained class action waivers – is preempted by the FAA and no longer good law. Furthermore, Plaintiffs' ability to proceed with mediation and arbitration on a cost-minimized or consolidated basis under the terms of the agreement – among multiple factors – negates any question of procedural or substantive unconscionability that might otherwise have rendered the Franchise Agreement unenforceable.

Accordingly, the Court should grant CleanNet's motion and order Plaintiffs to (1) mediate and, if necessary, arbitrate their claims; and (2) dismiss this action, or in the alternative, stay litigation pursuant to the FAA, pending the completion of dispute resolution.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether Plaintiffs must mediate and, if mediation is unsuccessful, arbitrate their claims pursuant to the dispute resolution provisions of the Franchise Agreement.

2. Whether Plaintiffs must arbitrate their claims on an individual or consolidated basis -- but not as class representatives -- pursuant to the dispute resolution provisions of the Franchise Agreement.

3. Whether the Court should dismiss this action or, in the alternative, stay litigation pending the completion mediation and, if necessary, arbitration.

## III. STATEMENT OF FACTS

As set forth in Plaintiffs' First Amended Class Action Complaint (Dkt. 11, "Complaint"), this dispute arises out of the commercial relationship between CleanNet -- a franchisor -- and the Plaintiffs, all of whom operated independently as "Local Franchisees" of CleanNet. CleanNet is a franchisor for commercial cleaning businesses specializing in janitorial services, building

maintenance, and related services. Each of the Plaintiffs individually contracted with CleanNet to operate as its franchisees under the terms of the Franchise Agreement. (Crum Decl., Exs. A-C).

Section XXII of the Franchise Agreement (Dispute Resolution) sets forth clear provisions regarding the procedures for dispute resolution:

> The parties to this Agreement recognize that compliance with the terms of this Agreement and the nature of the Franchisor/Franchisee relationship may give rise to the need to resolve disputes between the parties. Both Franchisee and Franchisor wish to avoid the time, expense and disruption that can result from lawsuits, but they desire to have a method of resolving disputes that is mutually acceptable. For this purpose, the parties expressly agree first to resolve disputes by direct negotiation with each other. If such negotiations fail to reach an agreement, the party dissatisfied with the outcome of negotiations must submit the dispute, within 180 days, to mediation and/or arbitration under this Section XXII, as follows:
>
> A. Mediation. Before, and as a necessary condition precedent to, filing a demand for arbitration in accordance with this Agreement, Franchisee and Franchisor shall attempt to settle the dispute through mediation administered by the American Arbitration Association ("AAA") at its office closest in proximity to Franchisor's office in accordance with the Commercial Mediation Rules of the AAA. The filing fee for the proceeding shall be borne by the initiating party. The mediator's compensation and any administrative costs shall be borne equally by both parties. If Franchisee and Franchisor arrive at an agreement through mediation, then that agreement shall be set forth in writing and be binding upon both parties.
>
> B. Arbitration. All disputes, controversies, and claims of any kind arising between the parties, including but not limited to claims arising out of or relating to this Agreement, the rights and obligations of the parties, the sale of the franchise, or other claims or causes of action relating the performance of either party that are unable to be settled through mediation shall be settled by arbitration administered by the AAA at its office closest in proximity to the Franchisor's office, in accordance with the Federal Arbitration Act and the Commercial Rules of the AAA unless the parties otherwise agree in accordance Section XXII.C of this Agreement.

(Franchise Agreement, p. 37).

Section B(6) of the Dispute Resolution provision further provides:

> To the fullest extent permitted by law, direct negotiation, followed by mediation and/or binding arbitration shall be the exclusive means of resolving any and all claims relating to this Agreement, including, but not limited to, claims for breach of contract, breach of the covenant of good faith and fair dealing, fraud, violation of any and all franchise

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

> registration, disclosure and/or franchisee protection statutes, regulations, or ordinances, whether federal, state or local, or any other common laws claims.

(*Id.*)

The Dispute Resolution provision also includes a clear class action waiver. Section B(5) of the Franchise Agreement provides:

> Franchisee shall not seek to arbitrate or litigate as a representative of, or on behalf of, any other person or entity, any dispute, controversy, and claim of any kind arising out of or relating to this Agreement, the rights and obligations of the parties, the sale of the franchise, or other claims or causes of action relating to the performance of either party to this Agreement. **Neither Franchisor nor Franchisee shall seek to have any claims arbitrated as a class action or on a class-wide basis.**[3]

(*Id.*, p. 38).

The dispute resolution section is clearly identified in the Franchise Agreement's table of contents, as well as within the body of the document, and is set forth in standard font and type-size with section headings that are bolded, capitalized, and underlined. (*Id.*) In addition to signing the agreement as a whole, as with all pages in the Franchise Agreement, Plaintiffs specifically initialed the pages containing the Dispute Resolution provisions, acknowledging that they had read, understood and agreed with the statements on the page as written. (*Id.*) Furthermore, Plaintiffs represented that they (1) had received 14 days to review all franchise disclosure documents before execution of the Franchise Agreement; (2) had received a substantially complete version of the Franchise Agreement at least seven days prior to its execution; (3) had read the Agreement in its entirety; (4) had the opportunity to clarify any provisions and to consult with an attorney or other professional advisor; (5) understood the terms, conditions, and obligations of the Agreement; and (6) agreed to be bound thereby. (*Id.*, pp. 35-36).

Notwithstanding the foregoing, Plaintiffs neither requested mediation nor arbitration per the terms of the Franchise Agreement before filing this class-action suit on March 18, 2014.[4] CleanNet,

---

[3] The bolded language is present in the Franchise Agreements signed by Isaac Carrazco and Maria Jacobo. *See* Crum Decl., Exs. A-B, at p. 42.

[4] The instant putative class action is one of three filed against CleanNet USA since March 26, 2014, along with: *Sanchez v. CleanNet USA, Inc. et al.*, United States District Court for the Northern

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Case4:14-cv-01785-JSW Document42 Filed07/10/14 Page13 of 33

on June 19, 2014, demanded that Plaintiffs comply with the dispute resolution provisions of the Franchise Agreement. (Declaration of Charles G. Miller ("Miller Decl."), ¶ 2, Exs. A-C). CleanNet subsequently initiated mediation proceedings before the American Arbitration Association. (Miller Decl., ¶¶ 3-4, Exs. D-I). However, plaintiffs have declined to proceed with mediation or arbitration. (Miller Decl., ¶ 4, Ex. J.)

## IV. ARGUMENT

### A. Federal and California Public Policy Favor Enforcement of Dispute Resolution Agreements

The Franchise Agreement provides that all disputes arising between the parties pursuant to the Franchise Agreement that are not settled through direct negotiation or mediation "shall" be settled by arbitration, in accordance with the FAA. (*Id.*, p. 37). The Franchise Agreement requires that the parties first mediate any dispute as a condition to arbitration. The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court recently reaffirmed that the FAA "reflect[s] both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract . . . ." *Concepcion*, 131 S.Ct. at 1745 (quotation marks and citations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As the Court reiterated, "[i]n line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *Concepcion*, 131 S.Ct. at 1745 (internal citations omitted).

---

District of Illinois, Eastern Division, Case No. 1:14-cv-02143; and *Torres v. CleanNet USA, Inc., et al.*, United States District Court for the Eastern District of Pennsylvania, Case No. 2:14-cv-02818. Also, on May 6, 2014, Cristina Alfaro, a California franchisee, sent a letter to the California Labor & Workforce Development Agency in order to comply with the administrative exhaustion prerequisite to filing a lawsuit under the California Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698 *et seq*. regarding which CleanNet has apprised the AAA. (Miller Decl., Ex. K.). All of the claims alleged in these cases are governed by the dispute resolution provisions set forth in the operative franchise agreements. To avoid the prejudice of redundant and potentially inconsistent adjudications, CleanNet USA has filed a Petition with the Judicial Panel on Multi-District Litigation ("JPMDL"), MDL Number 2560, seeking transfer to and consolidation in the Northern District of Illinois, where the first case was filed pursuant to 28 U.S. Code § 1407. That petition is scheduled to be heard on July 31, 2014 in Kansas City, MO.

-5-

2465.000/822143.4 D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA'S NOTICE OF MOTION AND MOTION TO COMPEL DISPUTE RESOLUTION / Case No. 4:14-cv-1785 JSW

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

The FAA codifies the "federal policy favoring arbitration" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (quotation marks and citations omitted). Congress enacted the FAA "to reverse the long-standing judicial hostility to arbitration agreements . . . ." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Accordingly, the Supreme Court has directed courts to "rigorously enforce" arbitration agreements under the FAA. *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). In fact, the Court has urged that, "The central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms. *Mastrobuono v. Seharson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995).

> The 'preeminent concern of Congress in passing the [FAA] was to enforce private agreements in which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate.'

*Kairy v. Supershuttle Int'l, Inc.*, 2012 WL 4343220 at *2 (N.D. Cal. Sept. 20, 2012) (citing *Mitsubishi*, 473 U.S. 614). California's public policy also strongly favors arbitration. *See, e.g., Armendariz v. Found. Health Psychare Services, Inc.*, 24 Cal. 4th 83, 97 (2000) ("California law, like federal law, favors enforcement of valid arbitration agreements.").[5]

B. <u>The Court Should Require Mediation Prior to Arbitration</u>[6]

Where, as here, the parties' agreement requires both mediation and arbitration in successive steps prior to litigation, courts have frequently required parties to initiate mediation prior to arbitration. *See, e.g., Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1291 (11th Cir. 2002) (requiring parties to participate in mediation prior to arbitration per the terms of the parties'

---

[5] This public policy in favor of arbitration applies equally in the employment and franchise context. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001) ("We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context …. Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation . . . ."); *see also Kairy*, 2012 WL 4343220 at *3 (applying *Concepcion* standard to franchisor's motion to compel arbitration of franchisee's claims).

[6] While CleanNet has initiated mediation of this dispute, Plaintiffs did not initiate mediation or arbitration prior to filing this action per the terms of the Franchise Agreement.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

agreement); *Sunopta Global Organic Ingredients, Inc. v. Prinir (Hadas 1987), Ltd.*, 2009 WL 2044683 (N.D. Cal. July 9, 2009) (staying case and compelling mediation followed by arbitration per the terms of parties' agreement); *Milos (1989) Ltd. v. Sunopta Global Organic Ingredients, Inc.*, 2008 WL 2561643 (N.D. Cal. June 26, 2008) (staying action and compelling mediation and, if necessary, arbitration, per the terms of the parties' agreement). Accordingly, the Court should enforce the dispute resolution provision of the Franchise Agreement and require the parties to mediate prior to arbitration, or in the alternative, to proceed directly to arbitration.[7]

C. After Mediation, if Necessary, the Court Should Enforce Arbitration

In line with this strong public policy favoring the enforcement of arbitration agreements, under the FAA, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (emphasis added). Indeed, courts' discretion to find otherwise is sharply proscribed; the FAA effectively requires a court to compel arbitration of issues covered by an arbitration agreement. *See, e.g.*, *Chiron*, 207 F.3d at 1130, *citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"); *see also Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 836 (N.D. Cal. 2012) (holding that if there is a valid and enforceable agreement between the parties to arbitrate and the claims at issue fall within the scope of the agreement, "the court must compel the parties to arbitrate their claims.") Accordingly, when a party

---

[7] The requirement of mediation in conjunction with arbitration does not preclude enforcement of the dispute resolution provision as a whole (inclusive of mediation and arbitration) or the arbitration provision. *See, e.g., Open Rd. Ventures, LLC v. Daniel*, 2009 WL 3809812 (N.D. Cal. Nov. 13, 2009) (generally upholding clause in agreement between parties to mediate and then arbitrate); *Cortez v. v. Ross Dress for Less, Inc.*, 2014 WL 1401869 (C.D. Cal. Apr. 10, 2014) (compelling plaintiffs to pursue their claims in accordance with the terms of a dispute resolution agreement containing provisions for mediation); *Correa v. Firestone Complete Auto Care*, 2013 WL 6173651 (N.D. Cal. Nov. 25, 2013) (in a case with similar provision for two step mediation-arbitration, compelling arbitration and staying case); *Morris v. Ernst & Young LLP*, 2013 WL 3460052 (N.D. Cal. July 9, 2013) (where dispute resolution agreement contained similar two-step mediation then arbitration provision, compelling arbitration and dismissing case).

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

moves to compel arbitration, the FAA requires the court to engage exclusively in a two-step analysis and determine whether:

(1) a valid arbitration agreement exists between the parties, and, if it does,

(2) the agreement encompasses the dispute at issue.

*Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *Kairy*, WL 4343220 at*2 ("Once the court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement.") (citations omitted.) Here, both prongs of the inquiry are satisfied.

1. <u>The Arbitration Provision is Valid and Enforceable</u>

By signing the Franchise Agreement, Plaintiff expressly agreed in writing to arbitrate any claims against Defendant. *See, e.g., Molina v. Scandinavian Designs, Inc.*, 2014 WL 1615177, at *4 (N.D. Cal. Apr. 21, 2014) (holding that by signing agreement to arbitrate any dispute, claim or controversy, Plaintiff was deemed to have assented to arbitration.) "If a contract contains an arbitration clause, the clause is presumed valid and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Fimby-Christensen v. 24 Hour Fitness USA, Inc.*, 2013 WL 6158040, at *2 (N.D. Cal. Nov. 22, 2013) (internal citations and quotations omitted). The FAA further provides that written agreements to arbitrate controversies arising out of an agreement "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. Accordingly, the arbitration agreement is valid and enforceable unless it may "be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but [it may not be invalidated] by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746. Here, no such generally applicable contract defenses apply.

a. <u>The Arbitration Provision Is Not Unconscionable</u>

Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid. *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 963 (9th Cir. 2012) (citing

*Armendariz*, 24 Cal.4th at 99); *see also Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257. 1280 (9th Cir. 2006); *Delmore v. Ricoh Americas Corp.*, 667 F.Supp.2d 1129, 1136 (N.D. Cal. 2009). In determining whether an agreement is unconscionable, courts employ a sliding scale test -- where the procedural unconscionability is low, the agreement will be enforced unless the level of substantive unconscionability is very high, and *vice versa*. *Armendariz*, 24 Cal.4th at 114. Here, Plaintiffs cannot meet their burden of proving that the arbitration provision of the Franchise Agreement -- to which they willingly contracted -- was *either* procedurally or substantively unconscionable, let alone both. *Correa v. Firestone Complete Auto Care*, 2013 WL 6173651 (N.D. Cal. Nov. 25, 2013) ("the party opposing arbitration bears the burden of proving that the arbitration provision is unconscionable") (internal quotations omitted).

(1) The Agreement is Not Procedurally Unconscionable

Procedural unconscionability concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778. 783 (9th Cir. 2002); *A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 486 (1982). "It focuses on two elements: oppression and surprise." *Marques v. Living*, 2014 WL 1379645 (N.D. Cal. Apr. 8, 2014) (citing *Armendariz*, 24 Cal. 4th at 113).

The oppression component focuses on whether there was an inequality of bargaining power and whether the weaker party lacked meaningful choice. *A & M Produce Co.*, 135 Cal.App.3d at 486; *Delmore*, 667 F.Supp.2d at 1136. The surprise aspect stems from whether the terms to which the party agreed were hidden in a prolix printed form drafted by the party seeking to enforce them. *Nagrampa*, 469 F.3d at 1280.

Neither oppression nor surprise is attendant here. Among other things, Plaintiffs acknowledged they had received the Franchise Agreement at least fourteen days before they signed it, giving them time to review the agreement and the disclosure documents before execution of the Franchise Agreement. While Plaintiffs vaguely allege that they did not receive adequate disclosures nor adequate time for their review,[8] Plaintiffs nevertheless willingly executed the Franchise

[8] Plaintiffs have not sufficiently evidenced a failure to meet these waiting periods; Plaintiffs' Complaint does not allege specific dates between delivery of disclosures and the Franchise

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Case4:14-cv-01785-JSW Document42 Filed07/10/14 Page18 of 33

Agreement whereby they explicitly acknowledged proper receipt of documents and adequate time for their review per the terms of the agreement: fourteen days to review the disclosures and a seven-day waiting period from the receipt of the Franchise Agreement to its execution. (Franchise Agreement, p. 35). Furthermore, Plaintiffs specifically initialed each of the four pages containing the dispute resolution provisions, acknowledging that they had read, understood and agreed with the statements on the page.

The Franchise Agreement also contains a second provision confirming that:

> Franchisee represents that it has read this Agreement and Franchisor's disclosure document in their entirety and that it has been given the opportunity to clarify any provision that it did not understand and to consult with an attorney or other professional advisor. Franchisee further represents that it understands the terms, conditions and obligations of this Agreement and agrees to be bound thereby.

(Franchise Agreement, p. 36.) In short, the Franchise Agreement encourages clarification and attorney consultation, and accords the potential franchisor control over the amount of time they require to review the Franchise Agreement before its execution -- fourteen days is only a *minimum* -- and potential franchisor have the discretion to take much longer if desired. (*Id.*) Again, the page containing this provision was specifically initialed by Plaintiffs acknowledging that they had read, understood, and agreed to it.

Given such unequivocal and repeated acknowledgments of ample opportunity to review and understand the agreement before assenting to it, Plaintiffs cannot now meet their burden of proving some unconscionable level of "surprise." *See, e.g., Delmore*, 667 F.Supp.2d at 1136 ("Delmore's argument [that the arbitration provision was procedurally unconscionable] is undercut by the fact that he initialed the arbitration clause, and only the arbitration clause. The clause, therefore, was not 'hidden' but required special attention."); *see also Correa*, 2013 WL 6173651, at *2 (holding that where plaintiffs did not "unequivocally deny" assent to arbitration, and had signed acknowledgment of dispute resolution plan, the terms of the plan did not constitute an unfair surprise and met a

---

Agreement and its ultimate execution so as to clearly preclude Plaintiffs' ability to review and understand the terms of the arbitration provision, which they explicitly and unequivocally acknowledged at the time by executing the Franchise Agreement and its various specific acknowledgements.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-10-
2465.000/822143.4
D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA'S NOTICE OF MOTION AND MOTION TO COMPEL DISPUTE RESOLUTION / Case No. 4:14-cv-1785 JSW

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

threshold level of procedural unconscionability even where agreement was drafted by party with superior bargaining strength and was offered on a take-it-or-leave-it basis with no opportunity for negotiation.)

In *Kairy*, the Northern District determined that a similar franchise agreement sufficiently met the minimal conscionability requirement: "Given the context of the franchise agreements and the attendant waiting period, the Court is not persuaded that there was a significant, or more than minimal, amount of procedural unconscionability in the signing of the [franchise agreements]." *Kairy*, WL 4343220 at *7 (citing *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006) (noting that evidence that defendant had "overwhelming bargaining power, drafted the contract, and presented it to [plaintiff] on a take-it-or-leave-it basis" amounted to only minimal evidence of procedural unconscionability)). Accordingly, where, as here, Plaintiffs were given ample time -- per their own acknowledgement -- to review the Franchise Agreement, any suggestion of procedural unconscionability is dubious at best.

Furthermore, the arbitration provisions of the Franchise Agreement were in no way hidden or obfuscated -- the table of contents clearly marked the section setting forth "Dispute Resolution," which contains a clear subsection titled "Arbitration." (Franchise Agreement, pp. ii, 37.) Similar identification of dispute resolution procedures in a table of contents in *Kairy* did not compromise the franchise agreements' enforceability. *See Kairy*, WL 4343220 at *7. *See, also*, Title 10, California Code of Regulations, § 310.114.1, which requires that the Disclosure Document contain a specific Addendum to advise the franchisee that there is an arbitration provision in the potential franchise agreement. The dispute resolution provision and its subsections were set forth in standard font and text, with section headings that are bolded, underlined, and capitalized. (Franchise Agreement, pp. 37-39.) And, while Plaintiffs intimate that the dispute resolution provision's four-page length connotes a "complicated, onerous set of procedures," (Complaint, ¶ 47), this also underscores its detailed and substantial presence in the Franchise Agreement, *i.e.*, that it was not somehow buried, easily overlooked, or otherwise lacking in detail. All of which, again, Plaintiffs specifically acknowledged that they had read, understood, and agreed with. To suggest now that the dispute resolution provisions were either somehow hidden or otherwise surprising would be unfounded.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Finally, any suggestion that the Franchise Agreement was procedurally unconscionable is undermined by the fact that "typical" Plaintiff Esther Estrada actually *upgraded* her Franchise Agreements with CleanNet, after over two years operating as a CleanNet Franchisee. (Complaint, ¶¶ 56-57.) This upgrade was made at Estrada's discretion and upon her initiative (Crum Decl., ¶ 4), and given her more than two-years of dealing with CleanNet, to suggest she had no meaningful choice in agreeing to the Franchise Agreement, or that she did not have adequate time or opportunity to review the Agreement, is misleading.

In total, the content and the context of the Franchise Agreement and its dispute resolution provisions -- all openly and willingly entered into by the Plaintiffs without surprise or oppression -- exceeds the level of procedural conscionability required and Plaintiffs cannot meet their burden of establishing otherwise. Accordingly, the arbitration provisions of the Franchise Agreement are not procedurally unconscionable. At most, to the degree the contract was offered on a take-it-or-leave-it basis, any procedural unconscionability would only be minimal.

(2) The Agreement is Not Substantively Unconscionable

The dispute resolution provisions of the Franchise Agreement are also not substantially unconscionable. "California law requires an arbitration agreement to have a modicum of bilaterality -- focusing on whether a provision is so one-sided as to shock the conscience." *Marques*, at *3 (internal quotations omitted) (citing *Armendariz*, 24 Cal. 4th at 117). This is simply too high a bar for Plaintiffs to meet. Here, Plaintiffs cannot establish that the Franchise Agreement and its arbitration provision are so unilaterally misbalanced.

(a) A Class-Action Waiver Is Not Unconscionable

To the extent that Plaintiffs should rely upon the Franchise Agreement's class-action waiver to evidence unconscionability, recent Supreme Court and California precedent under the *Concepcion* standard is unambiguous: arbitration provisions excluding class-wide arbitrations in the contracts at issue are no longer considered unconscionable. *See, e.g., Iskanian v. CLS Transp. Los Angeles, LLC*, 2014 WL 2808963 (Cal. June 23, 2014) (finding previous California cases maintaining that

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

class-action waivers in an arbitration agreement were unconscionable -- *Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005) and *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) -- to be abrogated by Supreme Court's decision in *Concepcion*); *see also Davis v. Nordstrom, Inc.*, 2014 WL 2808139 at fn. 1 (9th Cir. June 23, 2014) ("In *Concepcion*, the Supreme Court rejected [the] holding that a class waiver is unconscionable in a contract of adhesion, reasoning that the California rule to the contrary ran afoul of the [FAA]."); *Morvant*, 870 F. Supp. 2d 831 at 839 ("[T]he Court can find no principled basis to distinguish between *Discover Bank*, which was expressly overruled in *Concepcion*, and *Gentry*.").[9]

Indeed, the Supreme Court has extended its *Concepcion* ruling to hold that class action waivers in arbitration agreements will be strictly enforced under the FAA even where forcing plaintiffs to pursue individual arbitration actions would be highly impracticable or cost-prohibitive. *Italian Colors Rest.*, 133 S. Ct. 2304. Accordingly, the class-action waiver in the arbitration provision is enforceable and does not invalidate the arbitration provision or render it unconscionable.

(b) Costs Not Prohibitive

While the arbitration provision requires the filing fee for arbitration to be borne by the initiating party, it also provides that: "The arbitrator's compensation and any administrative costs shall be borne equally by both parties." (Franchise Agreement, p. 38). Such equality regarding fee-splitting, especially in the franchisor-franchisee context, weighs against unconscionability. *Kairy*, WL 4343220 at *8. ("Significantly, these terms in the arbitration provision apply equally to both Plaintiffs and Defendants and, arising in the context of franchise agreements as opposed to

[9] The Supreme Court's ruling in *Concepcion* extends to both the employment and franchise contexts. *See, e.g.*, *Kairy* WL 4343220 (applying *Concepcion* standard to arbitration provision in franchise agreement governing similar franchisor-franchisee relationship); *see also, e.g.*, *Jasso v. Money Mart Exp, Inc.* 879 F. Supp. 2d 1038 (N.D. Cal. 2012) ("In light of *Concepcion*, the California Supreme Court's decision in Gentry no longer provides a means to avoid enforcement of an arbitration agreement containing a class action waiver in an employment agreement"); *Lewis v. UBS Financial Services, Inc.* 818 F. Supp. 2d 1161, 1167 (N.D. Cal. 2011) ("Like *Discover Bank*, *Gentry* advances a rule of enforceability that applies specifically to arbitration provisions, as opposed to a general rule of contract interpretation. As such, *Concepcion* effectively overrules *Gentry*."); *Sanders v. Swift Trans. Co. of Arizona, LLC*, 843 F. Supp. 2d 1033, 1035 (N.D. Cal. 2012) (granting motion to compel arbitration "because *Gentry* was overruled by the Supreme Court in *Concepcion*.")). The California Supreme Court has confirmed this approach. *Iskanian*, 2014 WL 2808963 at *6. ("We thus conclude in light of *Concepcion* that the FAA preempts the *Gentry* rule.")

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

employment contracts, may present a lesser challenge for compliance.") Even to the extent that the initiating party is responsible for the filing fee for arbitration -- $975 -- this amount is not significantly higher than the $345 filing fee for cases filed in the Northern District of California.[10]

As far as mediation, Plaintiffs' arguments are moot: there are no filing fees under the AAA rules for mediation, and CleanNet is prepared to let the AAA or mediator decide how the costs of the mediation itself are to be allocated among the parties. (Miller Decl., ¶ 5). Even if the parties are required to split the cost of mediation, courts have recently maintained that such mediation provisions are not unconscionable. *See, e.g., McCaffrey Grp., Inc. v. Superior Court*, 224 Cal. App. 4th 1330, 1353 (2014) (holding that requirement that plaintiffs pay half of mediation costs was not unconscionable, given that plaintiffs had failed to meet their burden of showing that such mediation fees would be exorbitant or unreasonable). Plaintiff's intimation that "even a one-day mediation will often cost . . . thousands of dollars," and that, "CleanNet can make this significant outlay worthless simply by refusing to reach agreement," (Complaint, ¶ 47), are speculative at best, and cannot justify a finding of unconscionability. *See Kilgore v. Keybank National Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (holding that a mere risk of prohibitive costs is too speculative to invalidate an arbitration agreement). Plaintiffs also speculate that they must hire a lawyer even to negotiate or read the agreement, causing them more expense. Requiring negotiation before suit is a good thing, and it is not required that they have a lawyer to do so.

Nor would the arbitration costs be prohibitively expensive so as to deter arbitration. First, the true measure of prohibitive costs are those that would preclude access to the forum, and not those involved in actually proving the merits of the case; the Ninth Circuit has explicitly rejected the argument that "[small-dollar] claims . . . cannot be vindicated effectively [in arbitration] because they are worth much less than the cost of litigating them." *Coneff v. AT&T Corp.*, 673 F.3d 1158, 1159; *see also Morris v. Ernst & Young LLP*, 2013 WL 3460052, at *9 (N.D. Cal. July 9, 2013) ("The Supreme Court's recent ruling . . . affirms the Ninth Circuit's approach. The Supreme Court explained that 'the fact that it is not worth the expense involved in proving a statutory remedy does

---

[10] The franchise investment totals for the three Plaintiffs are $16,500; $16,200; and $10,000. (Complaint, ¶¶ 61, 67, 73); whether individually or in aggregate, the total would fall between $10,000 and $75,000, for which the initial filing fee for arbitration is $975.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

not constitute the elimination of the right to pursue that remedy.'") (citing *Italian Colors Rest.*, 133 S. Ct. at 2311). Unlike the situation in cases such as *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 925-26 (9th Cir. 2013), where the Ninth Circuit held that "even disregarding the cost to prove the merits," the "administrative and filing costs . . . effectively foreclose pursuit of the claim," the cost allocation measures of the dispute resolution provision here are not so prohibitive. Also, unlike *Chavarria*, the arbitration provision does not require apportionment of costs at the outset of arbitration; nor does it preclude recovery of costs, allowing instead for the arbitrator to enter an award to the same extent a court could do so. (Franchise Agreement, p. 38, Section XXII.B.4.)

On the other hand, the dispute resolution section of the Franchise Agreement includes measures for "Cost Minimization," stating that: "If the dispute is a small one, such that the anticipated costs of the dispute resolution . . . would exceed the amount of the dispute, the parties may seek to resolve the dispute through a local dispute resolution office . . . which may provide its services at no cost or a nominal cost." (Franchise Agreement, p. 39). The reasonable availability of such alternative cost-minimizing measures places the dispute resolution provision far afield of substantive unconscionability. Again, the mere risk that a plaintiff will face prohibitive costs is too speculative to justify invalidating an arbitration agreement. *Kilgore*, 718 F.3d at 1058.

Significantly, the dispute resolution section also explicitly provides for the consolidation of claims if the parties so agree:

> "4. Consolidation of Claims. Where one or more other franchisees of Franchisor have a dispute that is so nearly identical to a dispute involving Franchisee that Franchisor, Franchisee, and the other franchisee or franchisees agree that it would be prudent to have all the disputes resolved in a single mediation or arbitration proceeding, Franchisor, Franchisee, and the other franchisee or franchisees may agree in writing to submit the consolidated disputes to mediation and/or arbitration for determination by an arbitrator . . ."

(Franchise Agreement, p. 39). Some courts have found that prohibitions against consolidation may deprive plaintiffs with small claims of a means of redress. *See, e.g, Comb v. PayPal, Inc.*, 218 F. Supp. 2d 1165 (N.D. Cal. 2002). Here, the inverse prevails: where Plaintiffs comprise three distinct franchisees that could be eligible to consolidate their claims under the provisions of the Franchise

Agreement, costs may significantly be reduced for each individual Plaintiff, if agreement were reached to consolidate.

(c) Available Awards Not Significantly Limited

Plaintiffs' Complaint sets forth an argument of unconscionability premised on the limitation of potential damages available to Plaintiffs. (Complaint, ¶¶ 40-45). However, the arbitration provision *itself* contains no limitations on damages available to Plaintiffs, and courts have found that the presence of such provisions separate from the arbitration provision does not arise to a level of unconscionability. *Kairy*, WL 4343220 at *8 ("With respect to the provisions regarding the . . . possible cap on damages, the Court finds that those provisions are not specifically part of the arbitration clauses and their applicability or severability must be determined in the process of arbitration."). To the contrary, as discussed above, the actual arbitration provision of the Franchise Agreement provides wide power to the arbitrator to "enter an award, including injunctive relief, protecting [parties'] rights to the same extent a court could do so." (Franchise Agreement, p. 38, Section XXII.B.4).

(d) Availability of Alternative Procedures

Aside from the availability of cost-minimization and the potential for consolidation of claims, the arbitration provision also accommodates for other alternative procedures, reflecting the mutuality of the agreement. This includes the ability for either party to "propose to use a dispute resolution organization other than the AAA," or to "agree to use a private mediator or arbitrator." (Franchise Agreement, p. 38, Section XXII.C.1). The agreement also contemplates the choice of an alternate venue in Franchisee's location if Franchisee's office is more than 75 miles from Franchisor's office. (*Id.*, at Section XXII.C.2.)

Taken in totality, given the general mutuality of the arbitration provisions, along with its cost-minimizing and cost-consolidation measures and other alternative procedures accommodating Plaintiffs, the arbitration provision does not arise, on balance, to a level of substantive unconscionability that could overcome the strong preference for enforcement of a contractually agreed upon arbitration provision.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

b. The Court Should Sever Any Unconscionable Clause and Enforce Dispute Resolution

Whether by the terms of the Franchise Agreement itself or under California state law, should the Court find any dispute resolution clause in the Franchise Agreement unconscionable, it should sever the clause and enforce mediation and arbitration. First, the dispute resolution section of the Franchise Agreement specifically accommodates such a contingency with a saving clause:

> Saving Clause. If any provision of this Section XXII would violate applicable state or federal law, then the parties agree that such provision shall be excluded from the terms of this Agreement, or shall be modified to the minimum extent necessary to make the terms hereof lawful.

(FA, p. 39).

Likewise, the Franchise Agreement as a whole contains an express severability provision:

> Severability. Except as provided to the contrary herein, each section, part, term and/or provision of this Agreement shall be considered severable, and if, for any reason, any section, part, term and/or provision herein is determined to be invalid and contrary to , or in conflict with, any existing or future law or regulation by a court or agency having valid jurisdiction, such shall not impair the operation of, or have any other effect on, such other portions, sections, parts, terms and/or provisions of this Agreement as may remain otherwise intelligible, and the latter shall continue to be given full force and effect and bind the parties hereto, and said invalid sections, parts, terms and/or provisions shall be deemed not to be a part of this Agreement . . .

(FA, p. 40).

Independent to these provisions, California Civil Code section 1670.5(a) sets forth the Court's options upon such a finding:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court . . . may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

The California Supreme Court has interpreted section 1670.5(a) to mean that a court may only refuse to enforce the entire agreement if it is "permeated" by unconscionability. *Armendariz*, 24 Cal.4th at 122. Thus, "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." *Roman v. Superior Court*, 172 Cal.App.4th 1462, 1477 (2009)

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

(rejecting argument that allegedly unconscionable costs provision rendered arbitration provision unenforceable, as it was plainly collateral to the main purpose of the contract, such that it should be severed and the rest of the agreement enforced); *see also, e.g., Grabowski v. Robinson*, 817 F. Supp.2d 1159, 1179 (S.D. Cal. 2011) (finding that the arbitration agreement was not "permeated with unconscionability" and the three substantively unconscionable provisions could be severed."); *Lara v. Onsite Health, Inc.*, 2012 WL 4097712, at *13 (N.D. Cal. Sept. 17, 2012) (finding the single substantively unconscionable provision barring injunctive relief severable because the provision was "collateral to the main purpose of the contract."); *Kairy*, 2012 WL 4343220 at *8 (severing fee-splitting provision of arbitration agreement); *Marques v. Living*, 2014 WL 1379645 at *5 (finding that although injunction and fee provisions were unconscionable, "they can be severed and clearly are not the purpose of the agreement. Once these provisions are severed, the remaining degree of procedural unconscionability is too low to warrant invalidating the entire agreement. Accordingly, [Plaintiff] has failed to demonstrate that the agreement is so permeated with unconscionability that it is rendered completely unenforceable.").

D. The Dispute Resolution Provision Encompasses Plaintiffs' Claims

Once the Court determines that the arbitration provision is enforceable, it must then determine whether Plaintiffs' claims are encompassed by the arbitration provision. The Court must resolve any doubts thereto in favor of arbitration:

> [D]oubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration. The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute. *A heavy presumption weighs the scales in favor of arbitrability* . . . .

*Cione v. Foresters Equity Services, Inc.*, 58 Cal.App.4th 625, 642 (1997) (quotation marks and citation omitted; emphasis added); *see also Uptown Drug Co., Inc. v. CVS Caremark Corp.*, 962 F. Supp. 2d 1172, 1186 (N.D. Cal. 2013) ("To fall within the scope of an arbitration clause, a claim need only touch matters covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability.") (internal quotations omitted)).

Here, there can be no doubt that the dispute resolution provisions encompass Plaintiffs' claims. As set forth above, each of the Plaintiffs signed the Franchise Agreement in which they

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

expressly agreed to arbitrate any claims against CleanNet, including any "arising out of or relating to [the Franchise] Agreement, the rights and obligation of the parties . . . or other claims or causes of action relating the performance of either party." The dispute resolution provision of the Franchise Agreement explicitly sets forth that it applies to:

> . . . any and all claims relating to [the Franchise] Agreement, including, but not limited to, claims of breach of contract, breach of the covenant of good faith and fair dealing, fraud, violation of any and all franchise registration, disclosure and/or franchisee protection statutes, regulations, or ordinance . . . or any other common laws claims.

(Franchise Agreement, p. 38). Indeed, Plaintiffs' causes of action -- for violation of state franchise laws, breach of contract, breach of the covenant of good faith and fair dealing, and other common law claims -- are specifically identified among the claims that are subject to dispute resolution. Furthermore, this Court has previously held that similar claims to the ones at issue in this case, including statutory claims, can fall within the scope of a broad arbitration agreement. *Kairy*, 2012 WL 4343220 at *6. ("The Court finds the reasoning of other courts [in resolving in favor of arbitration regarding franchisee plaintiffs' claims that they were misclassified as independent contractors rather than employees] persuasive and finds that Plaintiffs in this action have not met their high burden of establishing that they could not effectively vindicate their statutory rights in arbitration.") Accordingly, by the terms of the Franchise Agreement, the Plaintiffs' claims are effectively encompassed by the dispute resolution provisions.

E. <u>The Court Should Compel Plaintiffs to Dispute Resolution on an Individual Basis</u>

The Court should enforce the arbitration provision and compel Plaintiffs to arbitrate their claims on an *individual* basis rather than on a class basis because the class action waiver in the Franchise Agreement is enforceable under *Concepcion*, as discussed above, and because CleanNet has not specifically agreed to arbitrate Plaintiffs' class claims. In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664, 130 S. Ct. 1758 (2010), the Supreme Court held that in the absence of a specific agreement to arbitrate a class claim, a party cannot be compelled to do so:

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

> [A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so . . . . An implicit agreement to authorize class-action arbitration . . . is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.

559 U.S. 662 at 664. Here, no such implication is even possible. The arbitration provision of the Franchise Agreement sets forth a clear class arbitration waiver. (*See supra*, pp. 4, 12-13). CleanNet cannot be forced to mediate or arbitrate Plaintiff's claims on a collective basis against the clear language of the class action waiver. *See, e.g., Parvataneni v. E*Trade Financial Corporation*, 967 F. Supp.2d 1298, 1303 (N.D. Cal. 2013) ("Absent evidence that [Defendant] agreed to class arbitration, it is unfair to coerce it to participate in proceedings that fundamentally change the nature of arbitration. Accordingly, this Court finds that the arbitration agreement does not provide for collective arbitration.") Therefore, once the Court compels dispute resolution for the reasons above, it should do so only on an individual basis. *See id.*, at 1302-1303 (compelling individual arbitration where agreement did not provide for collective arbitration).

F. <u>PAGA Claims are Subject to Individual Arbitration</u>

Even to the extent that Plaintiff brings this action pursuant to the California Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698 *et seq.*, this dispute is subject to individual arbitration despite the inherent "representative" posture of PAGA claims. The Northern District has been consistent and explicit in its position: "The Court notes at the outset that some courts in other jurisdictions have held that PAGA claims are necessarily representative and cannot be brought on an individual basis . . . . However, this District recognizes the existence of individual PAGA claims and therefore the Court does not find these cases persuasive." *Parvataneni v. E*Trade Financial*, 967 F. Supp.2d at fn. 1 (upholding individual arbitrability of PAGA claim). California district courts have been unequivocal in recognizing that a PAGA claim "is plainly arbitrable to the extent that [Plaintiff] asserts it only on his own behalf." *Quevedo v. Macy's, Inc.*, 798 F.Supp.2d 1122, 1141 (C.D. Cal. 2011); s*ee also Luchini v. Carmax, Inc.*, 2012 WL 3862150 (E.D. Cal. Sept. 5, 2012) (holding that PAGA claim was subject to arbitration: "The Ninth Circuit recently provided further

support that PAGA does not prevent arbitration . . . . A PAGA claim is a state-law claim, and states may not exempt claims from the FAA . . . . Based on *Concepcion* and subsequent court decisions, this Court sees no substantial difference of opinion on the issue whether PAGA entitles [Plaintiff] to avoid arbitration.") (omitting citations); *Nelson v. AT&T Mobility LLC*, 2011 WL 3651153 (N.D. Cal. Aug. 18, 2011) ("... *Concepcion* preempts California law holding that a PAGA claim is inarbitrable"). In short, Plaintiffs can be compelled to arbitrate their individual PAGA claims.

Furthermore, Plaintiffs' class-action waiver is enforceable and precludes them from arbitrating a PAGA claim on a representative basis. "Most California district courts addressing the issue have concluded that *Concepcion* preempts the California rule that PAGA waivers are unenforceable." *Appelbaum v. AutoNation Inc.*, 2014 WL 1396585 (C.D. Cal. Apr. 8, 2014) (citing *Morvant*, 870 F. Sup. 2d at 845-6 (N.D. Cal. 2012)); *Quevedo*, 798 F.Supp.2d at 1142 (Plaintiff's "PAGA claim is arbitrable, and the arbitration agreement's provision barring him from bringing that claim on behalf of other employees is enforceable."); *Grabowski*, 817 F.Supp.2d at 1181 (same); *Fardig v. Hobby Lobby Stores Inc.*, 2014 WL 2810025 at *6-7 (C.D. Cal. June 13, 2014) ("The Court rejects the argument that Plaintiffs' PAGA claims are not arbitrable and any suggestion that the waiver of representative PAGA claims renders the Arbitration Agreements unenforceable . . . Thus, Plaintiffs' PAGA claims are arbitrable on an individual basis, and the Arbitration Agreement's provision barring a PAGA claim on behalf of others is enforceable.")

Indeed, this Court has been consistently clear that PAGA claims are subject to individual arbitration, even where a class waiver precludes the plaintiff from bringing a representative action. In *Morvant*, this Court determined that PAGA claims were subject to FAA preemption:

> [T]he Ninth Circuit recently addressed this precise issue: whether, in light of *Concepcion*, the FAA preempts California's state law rule prohibiting the arbitration of claims for broad, public injunctive relief. The Ninth Circuit held that '[t]he FAA preempts California's *Broughton-Cruz* rule that claims for public injunctive relief cannot be arbitrated.' Thus, the Court must enforce the parties' Arbitration Agreement even if this might prevent Plaintiffs from acting as private attorneys general.

*Morvant*, 870 F. Sup. 2d 831 at 846 (citing *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 951 (9th Cir. 2012)). This Court has subsequently reemphasized its *Morvant* holding:

BARTKO ZANKEL BUNZEL
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

> Plaintiffs . . . . fail to offer any argument as to why this Court should depart from the jurisprudence of this District. First, Plaintiffs argue the class waiver provision violates [PAGA] because it prevents Plaintiffs from acting as private attorneys general, thus rendering the Agreement illegal and unenforceable. [The *Morvant* court] in this District recently addressed this precise issue under nearly identical factual circumstances. There, the court held the FAA preempts California's rule prohibiting the arbitration of claims for broad, public injunctive relief and, therefore, a court must enforce parties' arbitration agreements even if doing so might prevent Plaintiffs from acting as private attorneys general . . . . This court agrees. Considering that Plaintiffs have failed to provide any argument as to why this court should hold otherwise, the court finds no reason to depart from the *Morvant* court's reasoning.

*Fimby-Christensen v. 24 Hour Fitness USA, Inc.*, 2013 WL 6158040 (N.D. Cal. Nov. 22, 2013) (citing *Morvant*, 870 F. Sup. 2d 831 at 846); *see also Parvataneni v. E*Trade Financial Corporation*, 967 F. Supp.2d 1298, 1304-5 (N.D. Cal. 2013) ("Further, in the wake of *Concepcion*, an arbitration agreement that denies a plaintiff a right of collective action is still a valid agreement. Thus, it follows that an arbitration agreement that denies a plaintiff the right to pursue a representative PAGA claim is still a valid agreement.") (internal citations omitted); *Appelbaum*, 2014 WL 1396585 at *11 ("In light of the Supreme Court's holding in *Concepcion*, this Court similarly concludes that the waiver of representative PAGA claims in an arbitration agreement does not render the agreement unenforceable because concluding otherwise would undermine the FAA's policy of favoring the arbitration of claims . . . . Thus, [Plaintiff's] PAGA claim is arbitrable on an individual basis, and the . . . . provision barring a PAGA claim on behalf of others is enforceable."); *Valle v. Lowe's HIW, Inc.*, 2012 WL 4466523, at *2, 3 (N.D. Cal. Aug. 30, 2012) (upholding arbitrator's decision to dismiss plaintiff's representative PAGA claims but permitting him to arbitrate his PAGA claims on an individual basis).[11]

The "uniform reasoning found within this district" (*Fimby-Christensen v. 24 Hour Fitness USA, Inc.*, 2013 WL 6158040 at *4) cannot be overcome nor undermined by the California Supreme Court's recent decision in *Iskanian*. First, *Iskanian* did not reach the issue of the arbitrability of

[11] *See also Castro v. Cintas Corporation No. 3*, 2014 WL 1410524 (N.D. Cal. Apr. 11, 2014) (although basing its holding to compel arbitration on Ohio law, also opining that, "even if the arbitration agreement in this case were governed by California law, it is not clear that it would be unconscionable merely because it subjects PAGA claims to binding arbitration.")

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Case4:14-cv-01785-JSW Document42 Filed07/10/14 Page31 of 33

*individual* PAGA claims. *Iskanian*, WL 2808963 at *20 ("But whether or not an individual claim is permissible under the PAGA, a prohibition of *representative* claims frustrates the PAGA's objectives.") Rather, the *Iskanian* court limited its scope to representative actions and predicated its argument on the rationale that the FAA preempts private -- but not public enforcement -- actions such as a representative PAGA claim. *Id.*, at *21-23 ("We conclude that the rule against PAGA waivers does not frustrate the FAA's objectives because . . . the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state . . . Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the state.") (emphasis in original).

However, this reasoning directly contradicts the flat federal jurisprudence of this district and circuit; in *Morvant*, this Court determined that PAGA, even as a public cause of action, was subject to FAA preemption. *Morvant*, 870 F. Sup. 2d 831 at 846 ("The Ninth Circuit held that '[t]he FAA preempts California's *Broughton-Cruz* rule that claims for public injunctive relief cannot be arbitrated.' Thus, the Court must enforce the parties' Arbitration Agreement even if this might prevent Plaintiffs from acting as private attorneys general.") (citing *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 951 (9th Cir. 2012). Further, in *Parvataneni*, this Court rejected the argument that "parties cannot, by private consent, agree to waive rights created by the state under PAGA," holding that, "under the Supremacy Clause, the FAA is 'the supreme law of the land,'" and concluding that "in the wake of *Concepcion* . . . an arbitration agreement that denies a plaintiff the right to pursue a representative PAGA claim is still a valid agreement." *Parvataneni*, 967 F. Supp.2d at 1304-5 (internal citations omitted); *see also Fardig*, 2014 WL 2810025 at *6 ("[T]he Court concludes that a state law rule requiring arbitration agreements to permit collective PAGA actions is preempted as inconsistent with the objectives of the FAA.") Regardless, as a question of federal preemption, California Supreme Court rulings are not binding on this court, and to the limited extent *Iskanian* is relevant to this case, it runs afoul of this District's consistent holdings. *See, e.g., United States v. Nev. Tax Comm'n*, 439 F.3d 435, 439 (9th Cir. 1971) ("decisions of the states are not binding" on "question[s] of federal law."); *see also Quevedo v. Macy's, Inc.*, 2011 WL 6961598 (C.D. Cal. Oct.

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-23-
2465.000/822143.4
D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA'S NOTICE OF MOTION AND MOTION TO COMPEL DISPUTE RESOLUTION / Case No. 4:14-cv-1785 JSW

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

31, 2011) (finding that courts in Ninth Circuit have recently found *Concepcion* to hold that collective PAGA actions are subject to FAA preemption: "The Court is of the view that the Supreme Court of the United States has spoken on this issue and that this Court is under no obligation to follow the ruling of a California intermediate court of appeal (or indeed a ruling of the California Supreme Court) that is inconsistent with controlling Supreme Court precedent.")

Accordingly, despite being brought as a PAGA claim, the Court should nevertheless enforce the dispute resolution provisions of the Franchise Agreement on an individual basis. In *Parvataneni*, this Court found that even where an arbitration agreement was silent as to class arbitration, the agreement did not contemplate class arbitration and plaintiffs could be compelled to individual arbitration of their PAGA claims. *Parvataneni*, 967 F. Supp.2d at 1302-1303. Here, the Agreement is not silent, and Plaintiffs' PAGA claims should be compelled on an individual basis.

G. <u>The Court Should Dismiss or, in the Alternative, Stay the Action Pending Dispute Resolution</u>

Because Plaintiffs have failed to initiate mediation -- a condition precedent to arbitration -- and have refused to engage in dispute resolution, dismissal is appropriate. *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, 2007 WL 3232276, *8 (N.D.Cal. Nov. 1, 2007) ("A claim that is filed before a mediation requirement, that is a condition precedent to the parties' right to sue as set forth in an agreement, is satisfied shall be dismissed."); *Brosnan v. Dry Cleaning Station Inc.*, 2008 WL 2388392 (N.D. Cal. June 6, 2008) ("Failure to mediate a dispute pursuant to a contract that makes mediation a condition precedent to filing a lawsuit warrants dismissal.")

Furthermore, because all of Plaintiffs' potential claims are encompassed by scope of the dispute resolution provision,[12] dismissal is appropriate. *See Sparling v. Hoffman Cosnt. Co., Inc.*, 564 F.2d 635 (9th Cir. 1988) (holding dismissal was appropriate where "arbitration clause was broad enough to bar all of the plaintiff's claims"); *C.H.I. Inc. v. Marcus Bros. Textile, Inc.*, 930 F.3d 762, 763 ("Federal case law supports the district court's dismissal for failure to arbitrate."); At the least, the Court should stay the case pending dispute resolution. *See, e.g, Moody v. Metal Supermarket Franchising Am. Inc.*, 2014 WL 988811 (N.D. Cal. Mar. 10, 2014) ("[D]efendant

[12] *See supra*, Section IV.D.

Case4:14-cv-01785-JSW Document42 Filed07/10/14 Page33 of 33

BARTKO ZANKEL BUNZEL
BARTKO · ZANKEL · BUNZEL · MILLER
One Embarcadero Center, Suite 800
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

requests that the court dismiss this case, because the only claim presented in this case is subject to arbitration. The court agrees that all of plaintiff's claims are subject to arbitration, which, *at the very least*, warrants a stay of this action pursuant to 9 U.S.C. § 3.") (internal quotations omitted) (emphasis added). Section 3 of the FAA provides:

> If any suit . . . be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court in which such suit is pending, upon being satisfied that the issue involved in such suit . . . is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had . . . ."

9 U.S.C. § 3. Accordingly, should the Court not order dismissal, in addition to compelling mediation and, if necessary, individual arbitration of Plaintiffs' claims, the Court should stay this action pending the result of dispute resolution. *See, e.g.*, *Parvataneni*, 967 F. Supp.2d at 1305 (compelling individual arbitration of PAGA claim and staying case during arbitration.)

## V. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant their motion compelling mediation, and if necessary, arbitration on an individual basis and dismiss or stay the case pending the completion of dispute resolution.

DATED: July 10, 2014

BARTKO, ZANKEL, BUNZEL & MILLER
A Professional Corporation

By: *<u>/s/ Charles G. Miller</u>*
Charles G. Miller

Attorneys for Defendant
D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA and DAVID CRUM

-25-

2465.000/822143.4

D&G ENTERPRISES, INC. dba CLEANNET OF THE BAY AREA'S NOTICE OF MOTION AND MOTION TO COMPEL DISPUTE RESOLUTION / Case No. 4:14-cv-1785 JSW