IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTHER ESTRADA, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CLEANNET USA, INC., et al.,<br><br>　　　　Defendants.　　　　　　　　／ | No. C 14-01785 JSW<br><br>**ORDER GRANTING MOTIONS TO COMPEL ARBITRATION** |

Now before the Court are three motions to dismiss or to compel arbitration, filed by Defendants. (ECF Nos. 40, 41, 42.) Having carefully considered the parties' pleadings and relevant legal authority, the Court hereby GRANTS the motions to compel arbitration.

## BACKGROUND

The following facts are drawn from the operative complaint. Plaintiffs Esther Estrada, Isaac Carrazco, and Maria Jacobo ("Plaintiffs") are California residents who seek to represent a class of individuals allegedly injured by corporate Defendants CleanNet USA, D&G Enterprises, Inc., CleanNet of San Jose, CleanNet of Southern California, CleanNet of San Diego, CleanNet of Sacramento, and individual Defendants Mark Salek and David Crum (collectively, "Defendants"). Defendants are alleged to operate an integrated business wherein CleanNet USA controls its Area Operators, who in turn sell franchises to individuals. Each Plaintiff purchased a franchise. To purchase a franchise, each Plaintiff signed a franchise agreement. All three franchise agreements contained dispute resolution provisions and class

action waivers.[1] All three franchise agreements provide that the parties must first attempt to resolve disputes through direct negotiation. (FAC Ex. A; Crum Decl. Exs. A, B.) They then provide that, before a demand for arbitration can be made, the parties must attempt to settle their dispute through mediation. (*Id.*) If that fails, "[a]ll disputes, controversies, and claims of any kind arising between the parties, including but not limited to claims arising out of or relating to this Agreement . . . shall be settled by arbitration . . . ." (*Id.*) Finally, the agreements provide that "Franchisee shall not seek to arbitrate or litigate as a representative of, or on behalf of, any other person or entity, any dispute, controversy, and claim of any kind arising out of or relating to this Agreement . . . ." (*Id.*) Plaintiffs not only signed these agreements, they initialed each page. (*Id.*)

On April 18, 2014, Plaintiffs filed this putative class action. On June 03, 2014, Plaintiffs filed an amended complaint, alleging sixteen causes of action. Defendants now move to compel arbitration, or to dismiss the complaint.

**ANALYSIS**

**A.  Legal Standards Applicable to Motions to Compel Arbitration.**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. *United Computer Sys. v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); 9 U.S.C. § 4.

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

---

[1] Esther Estrada's franchise agreement differs from those entered into by the other two Plaintiffs in a manner that does not materially alter these provisions.

2

Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). The "central purpose of the [FAA is] to ensure that private agreements to arbitrate are enforced according to their terms." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 53-54 (1995). The "preeminent concern of Congress in passing the [FAA] was to enforce private agreements into which parties had entered, a concern which requires that [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (quotations omitted).

Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion."). Thus, as with any contract an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

**B.     The Franchise Agreements Are Not Unconscionable.**

Plaintiffs argue that the dispute resolution provisions are both procedurally and substantively unconscionable. They contend that the unconscionability permeates the entirety of the franchise agreements, and that the agreements as a whole are thus unenforceable.

Unconscionability remains a basic contract defense that may be used to invalidate arbitration provisions. *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740, 1746 (2011). "Like other contracts, an arbitration provision is invalid if it is both procedurally and substantively unconscionable." *Armendariz v. Found. Health Psychare Serv., Inc.*, 24 Cal. 4th 83, 114-15 (2000). Courts apply a sliding scale when analyzing these two factors, but "both must be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1171 (S.D. Cal. 2011) (quotation omitted). "The party opposing arbitration has the burden of proving the arbitration provision is unconscionable." *Id*. (quotation omitted).

3

### 1. The Franchise Agreements Are Minimally Procedurally Unconscionable.

Procedural unconscionability "concerns the manner in which the contract was negotiated and the circumstances of the parties at that time. The element focuses on oppression or surprise." *Gatton v. T-Mobile, USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007) (quotations omitted). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Id*. (quotations omitted). "Surprise is defined as the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed term." *Id*. (quotations omitted).

Plaintiffs argue that the dispute resolution provisions of the franchise agreements are procedurally unconscionable because they are the product of both oppression and surprise. With respect to oppression, Plaintiffs contend that, due to Defendants' superior bargaining power, Plaintiffs had no opportunity to negotiate the terms of the agreements, and no meaningful choice about whether to accept them. With respect to surprise, Plaintiffs argue that the dispute resolution provisions were buried within lengthy contracts Plaintiffs did not understand, and that Defendants failed to give Plaintiffs the statutorily required fourteen days to review them before signing.

In response, Defendants contend that the dispute resolution provisions were clearly labeled, with bolded, capitalized section headings that should have alerted Plaintiffs to their existence. Defendants argue that Plaintiffs were given the opportunity to review the agreements,[2] and that they were encouraged to consult with a lawyer before signing. Moreover, Defendants contend that Plaintiffs each represented in their respective franchise agreements that they were capable of doing business in English, and that doing so was not a undue burden on them.

---

[2] There is a dispute regarding whether Plaintiffs were in fact given fourteen days to review the franchise agreements. However, Plaintiffs admit that they each at least had several days in which to review their agreements before deciding whether to sign. (Estrada Decl. ¶¶ 4-5; Jacobo Decl. ¶¶ 4, 6; Carrazco Decl. ¶¶ 4, 6.)

4

1  Given the characteristics of these franchise agreements, and the circumstances under
2 which they were signed, the Court is not persuaded that there was any more than a minimal
3 amount of procedural unconscionability in the signing of the franchise agreements. *See*
4 *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1284 (9th Cir. 2006) (noting that evidence that
5 defendant had "overwhelming bargaining power, drafted the contract, and presented it to
6 [plaintiff] on a take-it-or-leave-it basis" amounted to only minimal evidence of procedural
7 unconscionability).

**2. The Franchise Agreements Are Not Substantively Unconscionable.**

Unlike procedural unconscionability, which focuses on the manner in which agreement to a disputed term was sought or obtained, substantive unconscionability relates to the actual terms of the arbitration agreement and whether those terms are "overly harsh" or "generate one-sided results." *Id.* at 1281 (internal quotation marks omitted). "The paramount consideration in assessing conscionability is mutuality." *Id.* (internal quotation marks omitted). Thus, to avoid substantive unconscionability, an agreement must possess a "modicum of bilaterality." *Armendariz*, 24 Cal. 4th at 117.

Plaintiffs argue that the dispute resolution provisions of the franchise agreements are substantively unconscionable because they are overly harsh, and because they sanction one-sided results. Specifically, Plaintiffs contend that the dispute resolution provisions create procedural hurdles,[3] shorten limitations periods, limit damages, prohibit recovery of fees, and impose substantial costs related to mediation and arbitration, all of which favors Defendants.

The Court finds that the dispute resolution provisions are not substantively unconscionable. Plaintiffs argue that the agreements impermissibly shorten the limitations period to 180 days when they state that, if negotiations fail, the dissatisfied party must submit the dispute to mediation or arbitration within 180 days. Defendants counter that they do not agree that this statement shortens the limitations period, and that, should the Court determine that it does, it is severable. The Court agrees that this statement is ambiguous, however, in an

---

[3]Plaintiffs refer in passing to "procedural hurdles," but fail to explain precisely what they mean by this phrase. Accordingly, the Court does not address any alleged "procedural hurdles" in assessing the agreements' substantive unconscionability.

5

1 abundance of caution the Court SEVERS the requirement that a dispute be submitted to
2 meditation or arbitration within 180 days.

3 With respect to Plaintiffs' contention that the dispute resolution provisions limit their
4 ability to recover fees and damages, the Court is not persuaded. Indeed, the agreements
5 expressly provide that any "arbitrator shall have the power to enter an award . . . protecting its
6 rights to the same extent a court could do . . . ." (*See* FAC Ex. A.) The Court further finds that
7 the waiver of punitive damages is not so egregious as to render the dispute resolution provisions
8 substantively unconscionable. To the extent Plaintiffs take issue with portions of the
9 agreements potentially bearing on recovery, but not contained in the dispute resolution
10 provisions themselves, these are matters for the arbitrator to decide. *See Kairy v. Supershuttle*
11 *Int'l, Inc.*, 2012 WL 4343220, at *9 (N.D. Cal. Sept. 20, 2012).

12 Finally, the Court is also not persuaded by Plaintiffs' arguments that arbitration would
13 present an undue financial burden on them. Plaintiffs contend that the dispute resolution
14 provisions' fee-splitting requirement is unconscionable because Plaintiffs cannot afford to split
15 the cost of arbitration. However, Plaintiffs fail to provide the Court sufficient information from
16 which the Court could draw a valid conclusion regarding Plaintiffs' ability to split costs. Nor
17 do Plaintiffs provide the Court with an estimate of the costs they might face should arbitration
18 move forward. Based on this dearth of information, the Court cannot conclude that the mere
19 speculative risk that arbitration might impose a financial burden on Plaintiffs justifies
20 invalidating the dispute resolution provisions. *See Green Tree Fin. Corp.-Alabama v.*
21 *Randolph*, 531 U.S. 79, 81 (2000) (holding that "a party seeking to invalidate an arbitration
22 agreement on the ground that arbitration would be prohibitively expensive bears the burden of
23 showing the likelihood of incurring such costs").

24 The Court further notes that the dispute resolution provisions provide that small disputes
25 may be settled in a local dispute resolution office, in an effort to minimize costs, and that
26 Defendants have repeatedly stated that they are willing to pay 100% of the costs of any AAA
27 mediation. For the above-stated reasons, the Court concludes that the dispute resolution
28 provisions are not substantively unconscionable.

6

1    The Court has found that the dispute resolution provisions are minimally procedurally
2 unconscionable, but are not substantively unconscionable. Accordingly, the Court must enforce
3 the dispute resolution provisions, and the parties are ORDERED to resolve their disputes in
4 accordance with these provisions.

### C.   Plaintiffs Must Arbitrate On An Individual Basis.

Plaintiffs concede that, should they be required to arbitrate, the dispute resolution provisions' class action waivers bar them from pursuing representative actions related to their franchise investment law, contract, and tort claims. (Opp'n at 12 n.7.) However, Plaintiffs argue that their PAGA claims should still be permitted to proceed on a representative basis.

PAGA permits individuals to bring representative claims for an employer's violation of the California Labor Code. Cal. Lab. Code. §§ 2699 et seq. Those individuals are essentially deputized as private attorneys general, and are permitted to seek penalties for violations "that could otherwise only be assessed by California's Labor and Workforce Development Agency." *Cunningham v. Leslie's Poolmart, Inc.*, 2013 WL 3233211, at *5 (C.D. Cal. June 25, 2013).

Numerous courts within the Ninth Circuit have held that class action waivers that extend to representative PAGA actions are permissible. *See, e.g.*, *Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418, at *9 (C.D. Cal. Feb. 5, 2013); *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 845-46 (N.D. Cal. 2012); *Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1140-42 (C.D. Cal. 2011); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1181 (S.D. Cal. 2011). The California Supreme Court, however, has held that, as a matter of California law, an employee's right to bring a representative PAGA action cannot be waived. *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348, 383-84 (2014). However, the California Supreme Court noted that this rule could be preempted if it conflicted with the FAA's objectives. *Id.* at 384. In upholding class action waivers, the United States Supreme Court has "made clear that any state-law rule standing as an obstacle to the accomplishment of the FAA's objectives of enforcing arbitration agreements according to their terms to allow for efficient procedures tailored to the specific dispute was preempted." *Fardig v. Hobby Lobby Stores Inc.*, 2014 WL 4782618, at *3 (C.D. Cal. Aug. 11, 2014). The district courts within the Ninth Circuit that have

7

upheld the waiver of representative PAGA claims have done so on the basis that permitting them to go forward when they have been waived in an arbitration agreement "would slow the dispute resolution process, in opposition to the FAA's goals." *Id.* (collecting cases).

The Court is persuaded that the reasoning employed by these other district courts is correct, and that permitting Plaintiffs' representative PAGA claims to go forward would contravene the FAA's purpose. The California Supreme Court's holding in *Iskanian* notwithstanding, this Court is bound to examine for itself whether PAGA waivers are permissible. The Court finds that the provision prohibiting Plaintiffs from proceeding on a representative basis extends to representative PAGA claims. To the extent the *Iskanian* holding would frustrate the FAA's goals, the Court finds that it is preempted. *See Fardig*, 2014 WL 4782618, at *4 ("Even in light of *Iskanian*, the Court continues to hold that the rule making PAGA claim waivers unenforceable is preempted by the FAA."). Plaintiffs may arbitrate their PAGA claims as individuals or, to the extent California law permits, as state agents, provided their relief is limited to that which they could obtain as individuals.

**D.     Standing.**

The Court has concluded that Plaintiffs must arbitrate their claims on a solely individual basis. The only question remaining is which Defendants must join Plaintiffs in arbitration. Defendants contend that Plaintiffs only have standing to sue those Defendants with whom they had direct contact.

The franchise agreements at issue here contain broad dispute resolution provisions which state that all disputes arising between the parties must be decided through mediation or arbitration. The Court finds that the question of which Defendants Plaintiffs may sue is a question that should properly be decided by the mediator or arbitrator. Accordingly, the Court declines to rule on the issue of standing at this time.

//

//

//

8

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motions to compel arbitration. Plaintiffs shall attempt to resolve their disputes, on a solely individual basis, in accordance with the franchise agreements that they signed. The Court further ORDERS the proceedings STAYED pending arbitration.

**IT IS SO ORDERED.**

Dated: February 24, 2015



JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE